## TREADWELL v. INTERNATIONAL TRAVELERS' ASSUR. CO.

### No. 2822.

Court of Civil Appeals of Texas. El Paso. April 27, 1933.

Rehearing Denied May 18, 1933.

Goggans & Keith and Davidson, Randall & Gray, all of Dallas, for appellant.

Curtis White and Seay, Seay, Malone & Lipscomb, all of Dallas, for appellee.

HIGGINS, Justice.

Mrs. Treadwell brought this suit against the appellee upon an insurance policy issued to her husband, W. P. Treadwell, in which she was named as the beneficiary.

Judgment for the defendant was rendered upon an instructed verdict.

The facts are agreed. Those material may be summarized as follows:

April 28, 1913, the International Travelers' Association issued a policy to Treadwell which covered accidental injuries and accidental death only. February 11, 1918, said association issued to Treadwell a policy which covered disability resulting from sickness.

February 1, 1921, the association issued a new policy to Treadwell in lieu of the poli-

cies previously issued. The new policy was a combination policy and covered accidental injuries, accidental death, and disability resulting from sickness. The suit is based upon this policy.

March 31, 1927, the appellee, International Travelers' Assurance Company, assumed the obligations under this policy.

The policy contained this provision: "The Association may cancel this policy at any time by written notice delivered to the insured or mailed to his last address as shown by the records of the Association, together with cash or the Association's check for the unearned portion of the premiums actually paid by the insured, and such cancellation shall be without prejudice to any claim originating prior thereto."

August 9, 1929, Treadwell became disabled by sickness and continued so disabled until October 28, 1930, upon which date he was instantly killed as the result of an accidental gas explosion in his home.

November 1, 1929, there was a premium of $9 due upon the policy and within the grace period Treadwell forwarded to appellee his check for that amount which check was received by appellee November 7, 1929. On the same date appellee returned the check to Treadwell with this letter:

"Dallas, Texas, Nov. 7, 1929.
"Mr. W. P. Treadwell,
    "4803 Columbia,
"Dallas, Texas.
"Dear Mr. Treadwell:
"We acknowledge receipt of and thank you for your remittance of $9.00 to pay the quarterly premium due on your policy November 1st. We are returning the check herewith, however, and regret to advise you that our policy cannot be continued at least for the time being.

"We presume you know that the rates for accident and health insurance are based on normal physical risks, and only those who are engaged in some regular work are eligible for this form of insurance. In view of the nature of your present illness and also in view of the fact that you will probably not be able to do anything for some time, you are not considered a strictly standard risk at least for the time being. When you have entirely recovered from your present illness it may be that we can consider your application for another policy.

"Please understand that our action in this matter will have no effect whatever on your pending claim but, on the other hand, you will be entitled to indemnity on the same basis and for the same period as if the policy had remained in full force and effect.

"Trusting that you are doing nicely and with kindest regards, we are,
    "Very truly yours,
    "International Travelers Assurance Co."

Not later than November 10, 1929, Treadwell received such letter and check. He made no further tender of premiums.

Appellee would not have accepted any further premiums had they been tendered, and Treadwell had been in the same physical condition as he was in at the time appellee wrote the above letter. Treadwell did remain in the same physical condition until his death.

Upon the date of said letter, in the opinion of appellee, Treadwell was not a normal physical risk, engaged in regular work, and was not eligible for this form of insurance. He was not a strictly standard risk at that time. Upon the date of said letter, appellee knew that Treadwell was not an insurable risk and could not present such physical condition as to obtain insurance of the same kind and character in any other reputable insurance company. Appellee knew that so long as Treadwell continued in such condition, injury to him was very likely to occur by accidental means. Appellee knew Treadwell was suffering from arteriosclerosis, cerebral hemorrhage, staggering, drowsiness, confusion, and hypertension, which condition continued until his death. Dr. Nash, of the insurance company, prior to November 7, 1929, reported Mr. Treadwell as an undesirable and unsafe risk to insure. Mr. Treadwell was not confined from August 9, 1929, to the date of his death entirely to his bed, but was confined to his home.

. From August 9, 1929 (the date the assured became disabled by his sickness), until the date of his death, appellee paid the assured all benefits accruing under the sick benefits of the policy. At the time of his death there was $89.28 due under such benefits which appellee offered to pay.

During the period of his sickness Dr. Harrison, the assured's physician, made various reports to appellee concerning the condition of assured. Some of these reports were made at the request of appellee.

### Opinion.

Appellant presents the proposition that though the policy in question reserved to the insurer the right to cancel the same upon notice, nevertheless the insurer will not be permitted to cancel the policy when such cancellation would operate as a fraud upon the rights of the insured; that the cancellation in this case under the facts did so operate and the insurer was estopped from exercising the right reserved.

In this connection appellant invokes cases from other jurisdictions which have denied the reserved right to cancel, when, at the time, a loss was imminent, and to permit such cancellation would operate as a fraud upon the assured and render the policy valueless. The question has usually arisen in connection with fire insurance policies.

It is unnecessary to review and discuss these cases. The effect of the rulings therein is well stated by Couch in 6 Cyclopedia of Insurance Law, § 1434, as follows:

"Right of Insurer to Cancel when Loss is Imminent.—If an accident or life policy contains no provision permitting the insurer to cancel at will, it must continue the same as long as premiums are tendered and its conditions are complied with, and it cannot cancel the policy when loss is imminent, since any other rule would allow the insurer fraudulently to relieve itself of all liability whenever it became apparent that, a loss was imminent. * * *

"Although a reserved right to cancel a fire policy may be exercised in case the risk is subjected to a greater danger of fire than existed when the policy was issued, provided the right is exercised in good faith, yet, if the act of cancelation will operate as a fraud upon the insured, by reason of some special emergency, such as an approaching conflagration, or a probable and threatened peril from fire which makes the liability to loss imminent, the privilege reserved to terminate the policy on notice cannot be exercised, for to admit such a right would render policies valueless."

And in 3 Joyce on Insurance, § 1662, as follows: "Company Cannot Cancel when Loss is Imminent.—Although a reserved right to cancel a policy may be exercised in case the risk is subjected to a greater danger of fire than existed when the policy was issued, provided the right is exercised in good faith, yet if the act of cancellation will operate as a fraud upon the assured, by reason of some special emergency, such as an approaching conflagration, or a probable and threatened peril from fire which makes the liability to loss imminent, the privilege reserved to terminate the policy on notice cannot be exercised, for to admit such a right would render policies valueless."

None of the authorities go so far as to deny the insurer the right to exercise a reserved right of cancellation simply because the risk of loss from the hazard insured against has increased.

We think the line of authority invoked by appellant is applicable only when loss is imminent and the hazard insured against is immediately impending.

██ The present facts show no imminent and impending danger to the insured of injury or death by accidental means. It is simply shown that he had become a very hazardous risk for accident insurance. This condition did not deprive the insurer of its plain and unambiguous contractual right to cancel. To hold otherwise would be to disregard the settled rule that the parties are at liberty to contract as they please with respect to cancellation and that stipulations of that

character are entirely valid. 3 Cooley on Insurance (1st Ed.) 2790.

The cancellation was authorized by the contract between the parties, and it cannot be regarded as in fraud of the rights of the insured.

■ Nor is there any merit in the contention that the cancellation was waived by appellee's action in requesting and receiving from the insured's physician reports concerning his physical condition while he was ill.

Appellee was obligated to Treadwell under the sick benefits of the policy—an obligation which would continue as long as his disability from sickness continued. Under such circumstances, appellee had the right to inquire and inform itself concerning Treadwell's physical condition. No one was better prepared to give such information than his attending physician. Requesting and obtaining such information from such physician raised no issue of waiver of the right of cancellation theretofore exercised.

Affirmed.