(No. 6656. May 25, 1939.)

STATE ex Rel. CALVIN E. WRIGHT, State Auditor, Respondent, v. EDWIN M. SMITH and STATE INSURANCE FUND, Appellants.

[91 Pac. (2d) 389.]

Clarence L. Hillman and R. J. Dygert, for Appellants.

J. W. Taylor, Attorney General, and R. W. Beckwith, Assistant Attorney General, for Respondent.

MORGAN, J.—The State of Idaho, on relation of Harry C. Parsons, state auditor, filed a claim with the industrial accident board against Edwin M. Smith, employer, and state insurance fund, surety, pursuant to I. C. A., sec. 43–1101, as amended by Chapter 147, Session Laws, 1935, page 364. Since this proceeding was commenced the term of office of auditor Parsons expired, and Calvin E. Wright, his successor, has been substituted for him as relator. For brevity, the state insurance fund will hereinafter be called the fund and the industrial accident board will be called the board.

Bobby Lew Horsley, sixteen years old, while working for Edwin M. Smith at his sawmill, was killed by accident arising out of and in the course of his employment. No claim for compensation was filed with the industrial accident board by or on behalf of anyone claiming to be dependent on him. Smith filed a claim against the fund for $473, being money paid by him to the father of deceased ''for funeral expenses and compensation.'' The board awarded $200 to Smith for funeral expenses and $1,000 to the state to be paid into the industrial administration fund. Smith and the fund appealed.

The appeal of the fund is based on cancelation of the policy of insurance, before the accident occurred, for failure of the insured to make a payroll report. The state and Smith contend the fund was without authority to cancel the policy, and base the contention on the fact that the statute makes no provision for such cancelation.

Paragraph 5 of the policy provides:

''5. That at the request of the Fund, the Insured shall furnish immediately a statement of all earnings of every kind of all his employees during any period in which this policy is in effect, and shall immediately pay to the Fund the premium computed upon such earnings or remuneration. . . . . ''

It is provided in paragraph 10 of the policy:

''10. That this Policy may be cancelled for cause by the Fund at any time by filing notice with the Industrial Accident Board of the State of Idaho and upon the Insured, either personally or by registered mail, at least ten days prior to the effective date of such cancelation; . . . . ''

The board found that a policy of insurance was issued by the fund to Smith October 21, 1936, and that a premium thereon, in the sum of $50, and a $3 policy charge were paid; that January 28, 1937, the fund wrote to Smith requesting him to send his payroll report covering the period from October 20 to November 15, 1936; that February 10, 1937, not having received a payroll report, the fund wrote to Smith that it was mailing him, under separate cover, a cancelation notice of his insurance policy; that the next day the following notice was sent to him by registered mail:

"You are hereby notified of the cancellation of your Workmen's Compensation Insurance Policy No. 20541 M issued by the State Insurance Fund, Department of Finance, of the State of Idaho. Said cancellation to be effective 12:01 a. m. 2–22–37 after which time, the said policy becomes null and void without further notice.

"This cancellation is made because of refusal to report payrolls.

"A copy of this notice has been filed with the Industrial Accident Board."

The accident to, and death of the employee, occurred June 23, 1937.

The board further found that at the time notice of cancelation was given a field agent of the fund was instructed to audit Smith's payroll, as soon as he could, and determine whether or not a part of the premium he had paid was returnable to him; that no audit was made until June 29, 1937; that March 24, 1937, the fund received from Smith $10.08 and March 26, 1937, it received from him $8.50 together with a payroll report showing additional payroll and premium, in said amount, due on his policy; that June 30, 1937, a field auditor of the fund audited Smith's payroll and found, in addition to the $10.08 and $8.50 paid in March, there had been earned, in premium on the policy, $21.81 which, after deducting said sum from the advance premium deposited by Smith, left a balance of $28.19, and that since February 1, 1937, to June 15, 1937, there had been earned an additional premium of $47.44; that Smith immediately tendered to the fund his check for $47.44, but it was refused and was re-

turned to him uncashed; that July 9, 1937, the fund sent a draft to Smith for $28.19, which was cashed by him. Of course, whether any premium was earned after February 22, 1937, depends on whether the policy was in force and effect after that date.

The board further found that when the field auditor was auditing the payroll he informed Smith that the fund deemed his policy had been canceled as of February 22, 1937, and that it refused any liability after that date, and that if he wished to carry insurance with the fund he would have to make a new application therefor; that Smith, at that time, signed an application for a policy and paid $50 as an advance deposit and $3 as an annual policy charge, and that July 1, 1937, the fund issued him a new policy. The findings are supported by the evidence.

 ██ ██ I. C. A., sec. 43–1722, is as follows:

''Every employer who is insured in the state insurance fund shall keep a true and accurate record of the number of his employees and the wages paid by him, and shall furnish to the department of finance, upon demand, a sworn statement of the same. Such record shall be open to inspection at any time and as often as the department shall require to verify the number of employees and the amount of payroll.''

The purpose of that section, and of the provision of the contract requiring the insured to make payroll reports, is to enable the fund to ascertain the amount to be collected as premium for carrying the risk. Without the information to be had from such reports the fund could not safely assume, and continue, its responsibility as surety under the workmen's compensation law. While there is no express statutory provision authorizing the cancelation of a policy for failure to furnish payroll reports, authority to enter into the contract of insurance here under consideration, with the provision for its cancelation, is clearly to be inferred from the language of the statute and the nature of the duties of the insurer and the purposes for which it has been brought into existence. The fund is administered by the department of

finance of the state and, with respect to it, sec. 43–1702, provides:

"It shall be the duty of the department of finance to conduct the business of the state insurance fund and the department is hereby vested with full authority over the said fund, and may do any and all things which are necessary or convenient in the administration thereof, or in connection with the insurance business to be carried on by the department under the provisions of this act."

Sec. 43–1705 is:

"The department of finance may make contracts of insurance as herein provided and such other contracts relating to the state insurance fund as are authorized or permitted under the provisions of this act."

Sec. 43–1718 provides:

"1. Every employer insuring in the state insurance fund shall receive from the department of finance a contract or policy of insurance. . . . . "

Sec. 43–1608 provides:

"No policy of insurance or guaranty contract or surety bond issued against liability arising under this act shall be canceled within the time limited in such contract for its expiration until at least ten days after notice of cancelation of such contract on a date specified in such notice, shall have been filed with the industrial accident board, and also served on the employer either personally or by registered mail."

In 71 C. J. 914, sec. 648, it is said:

"Where a policy, insuring an employer against accidents to his employees, provides that insurer may cancel it by sending to insured at his last known place of residence a notice by registered letter a stated number of days prior to the time such cancellation is to take effect and at the same time giving the state industrial commission notice that the policy has been canceled, a notice of cancellation which not only complies with the policy but with the provision of the Workmen's Compensation Law, relating to cancellation, will be effective to cancel the policy after the lapse of the prescribed time, in accordance with the terms of the notice, whether insured receives the notice or not. . . . . "

(See, also, Schneider's Workmen's Compensation Law, 2d ed., vol. 2, 1588, sec. 468; *Skoczlois v. Vinocour,* 221 N. Y. 276, 116 N. E. 1004.)

██ ██ The insurer has fully conformed to the requirements of sec. 43–1608, and to the provisions of the policy to be by it performed in order to effect a cancelation thereof, and the cancelation of the policy is upheld as between the parties thereto. It is not necessary to decide, in this case, what effect, if any, such cancelation has on the rights of an employee of the insured, or the dependents of such employee.

██ ██ In a case like this, where the amount of unearned premium, paid in advance, depends on the amount of wages paid by the employer, from the date the insurance became effective to the date of cancelation of the policy, and the amount earned and that remaining unearned cannot be ascertained prior to the date of cancelation, the right to cancel the policy cannot be made to depend on refunding, or tendering, the unearned premium to the insured. (*Talge Mahogany Co. v. Burrows,* 82 Ind. App. 253, 143 N. E. 692.)

The original pleadings in this case indicate the parties proceeded on the theory that the right of the state to recover $1,000 from the employer, to be paid into the industrial administration fund, depended on the deceased employee having left no dependent within the meaning of the workmen's compensation law.

The seventh paragraph of the state's claim is as follows:

"That said Bobby Lew Horsley, deceased, had no dependents at the time of his said injury and death, as that term is used in the Workmen's Compensation Act of the State of Idaho."

The fund's answer to that allegation is:

"Answering paragraph VII of said Claim and Petition for Hearing, these defendants deny the same."

The employer filed a separate answer and therein said:

"In answer to paragraph 7 of said claim this employer says, that at the time of the death of said Bobby Lew Horsley, deceased, the said Bobby Lew Horsley was contributing toward the support of his father, mother and sisters and that the said father, mother and sisters were dependents as pro-

vided by Chapter 147 of the 1935 Session Laws of the State of Idaho, at the time of the death of the said Bobby Lew Horsley.''

During the hearing it was stipulated that no claim of dependency was filed with the industrial accident board within one year after the death of the employee and, at the close thereof, counsel for the state was permitted to amend its claim by adding the following to paragragh 7:

''That no claim for compensation has been filed by any dependent of Bobby Lew Horsley, deceased, within one year from the date of the death of said Bobby Lew Horsley, being June 23, 1937.''

Whether the state is entitled to recover $1,000 from Smith, to be paid into the industrial administration fund, depends on the meaning and effect of the statutes hereinafter quoted.

Prior to its amendment sec. 43–1101, par. 6, contained this provision:

''In case there are no dependents of deceased employee, the employer shall pay into the state treasury to be deposited in the industrial administration fund the sum of $1,000.''

In 1935, the legislature, by chap. 147 of the session laws of that year, amended that provision so as to read:

''In case no claim for compensation is made by a dependent of deceased employee and filed with the Industrial Accident Board within one year after the death or in case a claim is made and filed within such year and no dependency proven the employer shall pay into the State Treasury to be deposited in the Industrial Administration Fund the sum of $1,000 . . . . ''

Sec. 43–1202 contains the following:

''No proceedings under this act for compensation for any injury shall be maintained unless . . . . a claim for compensation with respect to such injury shall have been made within one year after the date of the accident; or, in the case of death, then within one year after such death, whether or not a claim had been made by the employee himself for compensation. Such . . . . claim may be made by any person claiming to be entitled to compensation or by someone in his behalf. If payments of compensation have been

made voluntarily the making of a claim within said period shall not be required.''

Prior to the amendment of sec. 43–1101 we held that in order for the state to recover $1,000 to be deposited in the industrial administration fund, it must prove the deceased employee left no dependent. (*In re Stewart*, 49 Ida. 557, 290 Pac. 209; *Williams v. Intermountain Fireworks Co.*, 55 Ida. 28, 37 Pac. (2d) 231.) Sec. 43–1101, as amended, and sec. 43–1202, must be read and construed together. The effect of the amendment is to make proof that the deceased employee left no dependent unnecessary if no claim for compensation be made within a year after the death and if no payment of compensation be made voluntarily.

No legislative intention to repeal the last sentence of sec. 43–1202 is apparent, and we hold it is still in force and effect. Therefore, payment of compensation having been made voluntarily by the employer, the making and filing of a claim for it was not required, and the burden was on the state to prove the deceased employee left no dependent. No proof to that effect was offered.

The record shows Mr. Smith and Mr. Horsley, after they had been informed that the workmen's compensation insurance policy had been canceled, and with full knowledge of the facts bearing on the question of dependency, agreed on the amount which was to be paid for funeral expenses and compensation. It is apparent they both acted in good faith in this matter. That amount was paid and thereafter there was no occasion for Mr. Horsley to file a claim with the industrial accident board, because of the death of his son, for compensation and funeral expenses which had been paid voluntarily by the employer.

We cannot believe it was the intention of the legislature, in amending sec. 43–1101, to make it necessary for the dependent of a deceased employee, whose compensation has been paid voluntarily, in full, by the employer to file a claim therefor with the industrial accident board, and that failure to do so shall render the employer liable to pay $1,000 into the state treasury for the benefit of the industrial administration fund.

The order appealed from is reversed with direction to the board to dismiss the proceeding. Costs are awarded to appellants.

Ailshie, C. J., and Budge, Givens and Holden, JJ., concur.