DYE CONSTRUCTION COMPANY,
Petitioner,

v.

The INDUSTRIAL COMMISSION OF the STATE OF COLORADO, Charles J. McGrath, Executive Director, Department of Labor and Employment, State Compensation Insurance Fund, and Efren Cuevas, Respondents.

No. 82CA1500.

Colorado Court of Appeals,
Div. I.

Dec. 22, 1983.

Rehearing Denied Jan. 19, 1984.

Certiorari Denied March 26, 1984.

Goldstein & Armour, P.C., Darrel L. Campbell, Denver, for petitioner.

Duane Woodard, Atty. Gen., Alice Parker, Asst. Atty. Gen., Denver, for respondents The Industrial Com'n of the State of Colo. and Charles J. McGrath, Executive Director, Dept. of Labor and Employment.

Margaret D. Keck, Richard G. Fisher, Jr., Denver, for respondent State Compensation Ins. Fund.

No appearance for respondent Efren Cuevas.

BERMAN, Judge.

Petitioner, Dye Construction Company (Dye), seeks review of the Industrial Commission's affirmance of the hearing officer's ruling that the State Compensation

Insurance Fund had authority to cancel petitioner's Workmen's Compensation insurance policy for petitioner's failure to file a quarterly report. We affirm.

Dye is a Colorado employer which maintained Workmen's Compensation insurance through the State Compensation Insurance Fund (State Fund). An endorsement of Dye's insurance policy provided that the earned premium for the policy would be due and payable each calendar year and that "immediately after the expiration of each ... quarter," the insured must submit a written statement (payroll report) to the State Fund showing the wages and other remuneration earned by all employees covered by the policy.

On August 19, 1981, the State Fund sent Dye a letter which advised Dye that the State Fund had not received the payroll report and premium payment for the period April 1, 1981, through June 30, 1981, which was due at the State Fund's office no later than July 20, 1981. The letter further advised that unless the report and premium for that period were received by the State Fund by August 31, 1981, the policy would be cancelled effective September 1, 1981, without further written notice. Dye failed to make the quarterly report by August 31, 1981, and, in fact, did not mail the report and premium until September 11, 1981, which was after the date of the cancellation.

On September 14, 1981, the State Fund notified Dye that the policy had been cancelled effective 12:01 a.m. on September 1, 1981, for Dye's failure to submit the payroll report for the second quarter of 1981. On September 1, 1981, at about 11:30 a.m., an employee of Dye Construction Company injured his back while on the job. The injured employee then filed a claim for Workmen's Compensation benefits and the State Fund denied liability, claiming that Dye was not insured at the time of the employee's injuries.

Dye contested the State Fund's denial of coverage and a hearing was held in January 1982. In April 1982, the hearing officer held that the State Fund was within its authority in cancelling Dye's insurance policy for failure to file a quarterly report. Accordingly, the hearing officer found Dye to be uninsured at the time of the employee's injury and ordered Dye to pay: (1) temporary total disability compensation to the claimant from the date of the injury until further order of the Division of Labor; (2) the claimant's medical bills incurred as a result of injury; (3) a penalty for failure to admit or deny liability within the required time; and (4) interest at the rate of eight percent (8%) per annum. Pursuant to a petition for review, the Industrial Commission affirmed the hearing officer's decision in August 1982.

## I.

The dispositive issue presented by this petition is whether the State Fund is prohibited by § 8–54–114, C.R.S.1973, from cancelling Dye's Workmen's Compensation insurance policy for any reason except nonpayment of premium by the insured. The issue here is one of first impression in Colorado.

Section 8–54–114, C.R.S.1973, provides: "If any employer shall be in arrears for more than twenty days in any payment required to be made by him to the state compensation insurance fund as provided in Articles 40 to 54 of this title, he shall by virtue of such arrearage be in default of such payment and any policy issued to him by said fund shall thereupon be cancelled without notice as of the effective date or renewal date of said policy. *In the event cancellation of policy is made as provided in this section* and the state compensation insurance fund is required to make any expenditures for the benefits ... for any accident causing injury or death within said twenty-day period, said fund shall be entitled to reimbursement from the employer ...." (emphasis added)

Because no other section of the Workmen's Compensation Act specifically addresses the issue of cancellation, Dye argues that the State Fund is without authority, beyond that specifically granted by the above

statute, to cancel insurance policies. We disagree.

We note that the above-cited statutory provision is completely devoid of language specifically prohibiting the State Fund from cancelling an insurance policy for reasons other than non-payment of a premium.

Although a method for cancellation is provided by statute, unless it is manifestly all-inclusive, the statute, in specifying the instances under which a party to an insurance contract may cancel, does not make such cancellation the exclusive remedy, and it is not in derogation of other remedial rights which are recognized and implemented by other provisions of law. *De Campos v. State Compensation Insurance Fund*, 122 Cal.App.2d 519, 265 P.2d 617 (1954). Therefore, regardless of the lack of a specific grant of such authority under § 8–54–114, C.R.S.1973, we hold that the State Fund was authorized to cancel Dye's insurance policy for its failure to report.

The General Assembly has vested the manager of the State Fund:

"[W]ith full power and jurisdiction over the administration of the state compensation insurance fund ... [to] do and perform all things, whether specifically designated in [the Workmen's Compensation Act] or, in addition thereto, which are necessary or convenient in the exercise of any power or jurisdiction over said fund in the administration thereof under the provisions of this article as fully and completely as the governing body of a private insurance company might or could do ...." Section 8–54–102(2), C.R.S.1973.

This provision makes it clear that specific statutes, such as § 8–54–114, C.R.S.1973, do not preclude the State Fund from the exercise of authority which is not specifically granted within the Act, but is necessary or convenient to the effective operation of an insurance company.

The purpose of requiring employers insured in the State Fund to keep a record of the number of their employees and their wages and the purpose of the contract provision requiring them to make payroll reports is to enable the Fund to ascertain the amount to be collected as premium for carrying the risk. *State ex rel. Wright v. Smith*, 60 Idaho 316, 91 P.2d 389 (1939). Therefore, the power of the insurer to cancel insurance policies upon the failure of the insured to comply with this requirement of the insurance contract is, here, an implied power granted to the State Fund because it is necessary or convenient to the insurance company's administration of its business.

### II.

Since the State Fund has both the overall authority to operate as an insurance company, § 8–54–102(2), C.R.S.1973, and the authority to enter into insurance contracts, § 8–54–105(2), C.R.S.1973, we hold that the State Fund may enter into contracts with employers which cover a number of details, including that of cancellation, which are not set forth by statute so long as they conform with the public policy of this state. The General Assembly, for the most part, has left the details of a policy cancellation to the discretion of the State Fund and, here, the State Fund has elected to address the issue of cancellation in Article 15 of the insurance policy between itself and Dye as follows:

"*Cancellation.* This policy may be cancelled by the insured by surrender thereof to the company or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective ...."

Dye argues that the State Fund's power to cancel Dye's policy under Article 15 is nullified by Article 16 of the contract, which provides:

"The terms of this policy which are in conflict with the provisions of the Work-

men's Compensation Law are hereby amended to conform to such law."

However, such an argument is dependent upon the existence of a statutory provision which is in direct conflict with the provisions of the insurance policy and, as we have already stated, no such conflicting statute exists.

Dye's reliance upon *Chevron Oil Co. v. Industrial Commission,* 169 Colo. 336, 456 P.2d 735 (1969) for the proposition that an insurance policy may not enlarge the statutory paths for cancellation is misplaced. The *Chevron* case is inapposite to the case at bar because, here, unlike in *Chevron,* the Industrial Commission imposed no additional requirements as a prerequisite to cancellation by the State Fund; therefore, there was no further burdening of the insurer's right to cancel as there was in *Chevron, supra.* In addition, here, the contested cancellation provision is a clause in a contract, agreed to by both parties, rather than a rule promulgated by the Industrial Commission, as was the case in *Chevron, supra.*

■ Contract provisions for cancellation are valid, unless in conflict with the terms of an applicable statute. *U.S. Fidelity & Guaranty Co. v. Hollerich & Walgenbach Co.,* 22 Ill.App.3d 156, 319 N.E.2d 280 (1974); *Re International Re-Insurance Corp.,* 32 Del. Ch. 471, 86 A.2d 647 (1952); *Dyche v. Bostian,* 229 S.W.2d 25 (Mo.App. 1950), *aff'd,* 361 Mo. 122, 233 S.W.2d 721 (1950). Here, since there was no conflicting language in the applicable statute, § 8–54–114, C.R.S.1973, the contract provision allowing cancellation must stand.

■ An unequivocal agreement contained in a policy, by which either party may cancel the contract, is binding between the parties, *Gulf Insurance Co. v. Riddle,* 199 S.W.2d 1000 (Tex.Civ.App.1947); for the parties to an insurance contract validly may contract as they please with respect to cancellation. *Treadwell v. International Travelers' Assurance Co.,* 60 S.W.2d 536 (Tex.Civ.App.1933); *see also Francum Building Corp. v. Fail,* 646 P.2d 345 (Colo. 1982) (holding that parties can agree to contractual obligations beyond those imposed as a minimum by statute, where such obligations do not countervail public policy). Where no statute or rule of public policy controls, the parties to an insurance policy may make such agreement as they desire concerning the method of cancellation of the insurance policy, and where such contractual language is clear and unequivocal, the courts cannot make a new contract for the parties. *Medford v. Pacific National Fire Insurance Co.,* 189 Or. 617, 219 P.2d 142 (1950).

Here, the contractual language unambiguously provides that the insured was required to submit a payroll report and that, under Article 15 of the policy, the State Fund was authorized to cancel with ten days notice. Therefore, we cannot make a new contract for the parties. Since the State Fund was authorized, both by statute and by contract, to terminate Dye's insurance policy on September 1, 1981, we hold that the findings of fact and conclusions of law of both the hearing officer and the Industrial Commission were correct.

In view of the stipulation entered into on July 30, 1982, between Dye and the employee-claimant, in which the parties agreed that Dye will receive credit for the monies paid by Dye to the claimant after his injury, the second issue raised by Dye in its brief has been rendered moot and we need not address it here.

Order affirmed.

PIERCE and METZGER, JJ., concur.