[Civ. No. 7036.  Third Dist.  Apr. 28, 1944.]

MARY LEN MINE  (a Copartnership) et al., Petitioners, v.
INDUSTRIAL  ACCIDENT  COMMISSION,  ALTA
MAE PAYNE et al., Respondents.

George C. Faulkner for Petitioners.

E. A. Corten, Dan Murphy, Jr., and Edmund J. Thomas for Respondents.

PEEK, J.—This is a petition by the Mary Len Mine, a copartnership, and four of the individual members thereof, to review an award made by respondent Industrial Accident Commission to the widow and four minor children of William Ralph Payne, deceased.

The commission, by its decision after rehearing, found (Finding No. 1) that the decedent, "while employed as a miner . . . by Mary Len Mine, a copartnership, and by Victor J. DeCampos, Al. B. Broyer, Marvin R. Fleming and Thomas C. Seitzinger, doing business as Mary Len Mine", received fatal injuries, and that his wife and his minor children were entitled to a death benefit in the sum of $5,985, payable in weekly designated payments based on wages of $150 per month. The commission further found (Finding No. 5) that the decedent "was a working member of the defendant partnership herein and received wages irrespective of profit from said partnership herein. He is therefore an employee within the meaning of the Workmen's Compensation, Insurance and Safety Laws of the State of California." It further found (Finding No. 4) that the defendant employers were covered

by a compensation insurance policy issued by the State Compensation Insurance Fund, which ''policy specifically excluded coverage with respect to deceased employee, who at the time of the injury was a working partner and a member of the co-partnership generally insured by said State Compensation Insurance Fund. Said carrier is therefore entitled to be dismissed herefrom.''

The award was made in accordance with said findings in favor of the widow and minor children and against the co-partnership and petitioners named herein.

It is now contended by petitioners that by the award the commission acted without and in excess of its power by refusing to join other parties defendant; that the commission erred in the admission of hearsay evidence and in its refusal to admit testimony regarding the interpretation of the insurance contract, by the disaffirmance or nonaffirmance of such contract by the respondent State Fund; that the award is unreasonable and the result of bias and prejudice of the referee, and deprives petitioners of due process of law and their property under the Fourteenth Amendment to the Constitution of the United States, and that the award is not supported by the findings of fact.

The record discloses that during the fall of 1940 the petitioners herein leased certain mining property known as the Mary Len Mine near the town of Penryn in Placer County. Articles of copartnership were adopted and signed by the four individual petitioners and the deceased. Said articles provided that each of the petitioners named would contribute the sum of $1,000 or its equivalent under conditions therein set forth. The articles further provided that decedent, having already made certain contributions to the maintenance and operation of the mine, would contribute an additional sum of $360 for his one-fifth interest, ''which said sum he shall contribute by the performance of services on behalf of the said co-partnership and by permitting one-half of his *wages* to accumulate against the payment of his partnership interest. All of the co-partners who are actually working and performing services in the Mary Len Mine shall do so upon the basis of receiving one-half of their respective *wages* until such time as the Mary Len Mine is operated upon a profitable basis.'' The partnership agreement further mentioned that others of the partners ''are to receive *wages* for personal serv-

ices rendered and performed upon behalf of said co-partnership.'' (Italics ours.)

Subsequent to the adoption of the original agreement two additional partners were included by separate agreements granting each a five per cent interest for which each agreed to pay the sum of $500 by the performance of ''personal services for said partnership . . . and shall permit one half (½) of said *wages* so earned to accumulate against the $500.00 to be paid for the partnership interest.'' (Italics ours.)

During the month of December, 1940, application was made to the respondent State Compensation Insurance Fund for a policy of compensation. The application designated the organization as a copartnership composed of the four petitioners named herein, and in general described the work to be covered as quartz mining near the town of Penryn, but did not name decedent as a partner. Thereafter, by a supplemental report, more specific information was given relative to the operations and location of the mine. In accordance with the application the State Fund issued its policy of insurance wherein it agreed to cover the work contemplated at the designated location. Said policy, on the back thereof, specifically provided that it did not cover ''the following risks, persons, operations, work or employments; . . . if the insured be a firm, association or copartnership, any member of such firm, association or copartnership.''

It is apparent that the first question for consideration must be a determination of the working-member status of the decedent, while the second must be a determination of the construction of the exemption set forth in the policy, and if it be concluded that (1) the wording of the exclusion clause presents an ambiguity or uncertainty which must be resolved most strongly against the carrier, or (2) if the interpretation to be placed upon the insurance contract, in the light of the statutory law, leads to the conclusion that the policy did cover the activities of decedent while working as an employee member of the partnership for wages irrespective of profits from said partnership, then in either event the further questions raised by petitioners herein become immaterial.

The evidence before the commission discloses that the original articles of partnership referred to the ''wages'' to be received by the decedent although much of the evidence in regard to this question is in sharp conflict. However, Mr.

Broyer, one of the partners, in response to a question regarding the limitation of time, if any, as to cash withdrawals, stated that "they were to continue drawing these amounts until a profit was obtained from the mine, *if any;*" and in reply to a question regarding the balance over and above the amount the decedent withdrew, stated, "yes, that was all to be credited to a fund and considered on distribution of profits, *if any.*" (Italics ours.) In its payroll reports to the State Fund the decedent was included as an employee and not as a partner. The widow of the decedent also testified to the fact which was objected to by the petitioners as hearsay that Payne received "wages" every two weeks.

As it is reasonably apparent from the record that the working partners were to participate in the profits, *if any,* that accrued, but meanwhile they were to receive *wages irrespective of profits,* there is support for the finding of the commission that the decedent was an employee under section 3359 of the Labor Code, and thereby entitled to the benefits of the act. Such being the case this court "is unable to set aside an award because of the admission of incompetent evidence, provided there is enough competent evidence to uphold the same." (*Maryland Casualty Co.* v. *Industrial Acc. Com.,* 178 Cal. 491, 493 [173 P. 993].) Therefore the question relating to the status of the decedent is reduced to a consideration of the one remaining element—was Payne at the time of his death a partner within the meaning of the exclusion clause, thereby precluding his dependents from obtaining compensation from the State Fund?

Prior to the adoption of the Workmen's Compensation Act, Statutes 1917, page 831; Deering's General Laws, 1937, Act 4749, the courts of this state had followed the rule originally laid down in the English cases and uniformly held that members of partnerships were not eligible to compensation. (*Cooper* v. *Industrial Acc. Com.,* 177 Cal. 685, 689 [171 P. 684].) However, since the adoption of the amendatory acts of 1917, the rule has been reversed so that now we have specific statutory authority that a partner working for "wages irrespective of profit," comes within the provision of the act. (Lab. Code, § 3359.) The practical effect of such section is to make possible a situation wherein an individual may be both partner-employer and partner-employee.

The Supreme Court, in the case of *Johnson* v. *Industrial*

*Acc. Com.,* 198 Cal. 234 [244 P. 321], wherein the constitutionality of section 8(b) of the Workmen's Compensation Act (now Lab. Code, § 3359) was directly in issue, quoted with approval from the case of *Gallie* v. *Detroit Auto Accessory Co.,* 224 Mich. 703 [195 N.W. 667], where the court stated: "It is somewhat anomalous to say that a partner may, as a member of the firm, be an employer, and as such come within the compensation law, and, then, if he works for the firm for wages, be also an employee within the meaning of the act, but the compensation law so provides, and it is evidently based on the holdings that a partner may, by special agreement, be entitled to wages for services rendered the firm. . . ."

In the same case the Supreme Court further quoted with approval from the case of *Ohio Drilling Co.* v. *State Industrial Com.,* 86 Okla. 139 [207 P. 314, 25 A.L.R. 367], wherein the Oklahoma court said that "a construction . . . that a member of a partnership, who works for a partnership . . . is *not* an employee . . . is an exceedingly narrow construction of the act." See, also, 81 A.L.R. 654, 658.

If, then, as we have determined, there was evidence to warrant Finding No. 5 of the commission we next must turn to Finding No. 4 which, read in relation to Finding No. 5, is to the effect that although Payne was engaged in a dual capacity, that is, a working member for "wages irrespective of profits" and therefore entitled to compensation, nevertheless he also was a partner, and by virtue of this latter fact, he came within the terms of the insurance contract excluding partners from benefits, and the insurance carrier thereby was absolved from all liability for such compensation. ▮ By such findings an obvious question immediately arises, that is, if Payne could be a partner and an employee both at one and the same time, does such situation present an uncertainty when viewed in connection with the exclusion provision in the insurance contract and the quoted sections of the codes? It is the studied opinion of this court that such is the case.

Inasmuch as the State Fund by its contract agreed to compensate a partner working for wages irrespective of profits, in accordance with the provisions of the workmen's compensation laws and particularly section 3359 of the Labor Code, and by the same contract specifically excluded in general terms partners as such, it properly can be contended that an ambiguity or uncertainty is thereby presented. In the

case of *Maryland Casualty Co.* v. *Industrial Acc. Com.*, 178 Cal. 491 [173 P. 993], it was held that because of an uncertainty in the construction of a particular clause in the contract of compensation there in issue the court should be guided by the rule expressed in section 1654 of the Civil Code, and therefore as the insurer caused the uncertainty to exist it should be construed most strongly against it. In a later case wherein the construction of an insurance policy was again directly in issue (*Greenberg* v. *Continental Cas. Co.*, 24 Cal.App.2d 506 [75 P.2d 644]), the court, quoting with approval from the case of *Aschenbrenner* v. *United States Fid. & G. Co.*, 292 U.S. 80 [54 S.Ct. 590, 78 L.Ed. 1137], stated: "The phraseology of insurance contracts is that chosen by the insurer and the contract in fixed form is tendered to the prospective policy holder. . . . So if its language is *reasonably open to two constructions,* that more favorable to the insured will be adopted. . . ."

It is well settled in this state that "all applicable laws in existence when an agreement is made necessarily enter into it and form a part of it as fully as if they were expressly referred to and incorporated in its terms. . . ." (6 Cal.Jur. 310.) "Hence, the courts must read as a part of a contract the laws of the state existing at the time it was made." (6 Cal.Jur. 312.) It is also established by section 1654 of the Civil Code that uncertainty in the language of a contract "should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party." Thus any ambiguity or uncertainty in an insurance contract is to be construed most strongly against the insurer. The carrier framed the contract and "is supposed to make it as potent as possible in his own favor." (6 Cal.Jur. 308.) The policy in question specifically states that the said fund will pay to anyone entitled under the workmen's compensation laws "as therein provided" any sums due for compensation for injuries or in the event of death, to their dependents. The State Fund itself has added further authenticity to such construction by a letter of December 31, 1940, addressed to petitioners, which was mailed with the policy, wherein it was stated: "The Fund has assumed your liability for industrial injuries in accordance with the *provisions of the Workmen's Compensation Law* and the terms of your policy. . . ."

Turning then to the second phase of the question—the interpretation of the statutes—we find in section 3202 of the Labor Code that the direct expression of the Legislature of its intent and purpose in adopting our present compensation laws was that such laws "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." Under such statement of legislative intent to guide the courts in their interpretation of the act it cannot be denied that one who comes within the provisions of section 3359 of the Labor Code, that is, a partner working for wages irrespective of profits, is an individual entirely separate and distinct from a partner in the usual concept of the term. In the exemption clause of the contract of compensation it is to be noted that unless specifically included a member of a co-partnership is not covered. However, as section 3359 of the Labor Code specifically does include as an employee a member working for wages irrespective of profits, it logically would seem to follow that the clause set forth in the contract only refers to partners as such and not to the code exception of a partner *working for wages irrespective of profit.* Further support for such conclusion is found in the case of *National Auto Insurance Co.* v. *Industrial Acc. Com.*, 19 Cal.2d 540 [122 P.2d 1], where, in construing a contract of compensation wherein nephews or nieces were expressly mentioned but nephews or nieces by marriage were not, the court held that "Inasmuch as the policy expressly excluded certain designated relatives by marriage, and inasmuch as nephews or nieces by marriage were not so expressly excluded, it must be concluded that there was no intention to exclude them."

Section 1165 of the Insurance Code provides that every contract of insurance shall contain a clause to the effect that the insurer shall be directly and primarily liable to any claim-ant for payment of any compensation for which the employer is liable, subject, however, to the specific terms of the policy. Sections 1646 and 1656 of the Civil Code provide that all applicable laws in existence at the time when the agreement was made must enter into and form a part of the agreement as fully as if they were incorporated therein. Under the circumstances herein presented the partnership and the individual members thereof could not defeat the claim of the dependents of the decedent upon the ground that he was not a partner working for wages irrespective of profits. Like-

wise, the carrier could not escape liability unless the exclusion clause of the contract was sufficiently broad and explicit to accomplish such purpose. In view of the decided cases and the code sections cited, this court, therefore, must read into the contract in question the provisions of section 3359 of the Labor Code that a working member of a partnership receiving wages irrespective of profits, is an employee under the act, and, as in the National Auto Insurance Company case the policy excluded only partners as such, it must be concluded that there was no intention to exclude a partner working for wages irrespective of profits.

Section 3359 of the Labor Code establishes a partnership capacity entirely separate and apart from the office of a partner in its usual sense, and thereby the Legislature has specifically created dual capacities. The exclusion clause of the contract only excepts a partner in the commonly excepted sense. No mention is made of a partner working for wages. Referring back to the first question we raised—if such exclusion clause creates an uncertainty or ambiguity—the determination of this court must be in accordance with the well established rules previously mentioned, and therefore such clause must be construed to exempt only partners as such. And secondly, by reading into the contract, as this court must, the provisions of section 3359 of the Labor Code, and likewise heeding the admonition of the Legislature as to the purposes for which compensation legislation was enacted, we are compelled to hold that although the commission properly found that Payne was an employee within the provisions of the code, yet, nevertheless, it improperly found that he was excluded by the provision in question in the policy and absolved the State Fund from all liability.

The award is therefore modified as herein indicated and the cause is remanded with instructions to the commission to find in accordance with the opinion expressed, and to enter judgment accordingly for the dependents of the decedent Payne.

Adams, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied May 24, 1944, and respondents' petition for a hearing by the Supreme Court was denied June 26, 1944.