[Civ. No. 15251.   First Dist., Div. One.   Jan. 15, 1954.]

VICTOR JAMES DE CAMPOS et al., Appellants, v. STATE COMPENSATION INSURANCE FUND, Respondent.

R. Edward Burton for Appellants.

Donald Gallagher, Royle A. Carter and Allan Sapiro for Respondent.

WOOD (Fred B.), J.—William Ralph Payne, a partner-employee of Mary Len Mine, a copartnership, died as the result of injuries received during the course of his employment. His dependents instituted a proceeding before the Industrial Accident Commission against the employer and against the State Compensation Fund as the employer's insurance carrier. The commission awarded them compensation to be paid by the State Compensation Insurance Fund and discharged the employer.

In that proceeding the employer and the insurance carrier appeared separately and were represented by different attorneys.

Subsequently, the employer brought the present action against the carrier to recover $4,428.60, the amount of counsel fees and costs expended or incurred by the employer in the workmen's compensation proceedings, claiming

that the carrier by its policy of workmen's compensation insurance had agreed to defend on behalf of plaintiff all claims or suits against plaintiff but failed and refused to do so in the proceeding mentioned.

The defendant by its pleadings (1) denied that as between the employer and the carrier the insurance policy was at any time in force in respect to the injury or death of William Ralph Payne, because of asserted misrepresentation and concealment by the employer of material facts with reference to the risk and violation by the employer of specific affirmative warranties as to the person insured, and breach of promissory warranties to report all the employees' earnings and pay premiums thereon; (2) alleged that the employer, having first breached the contract, was in default and could not require the carrier to further perform, nor could the employer recover damages for the alleged subsequent breach by the carrier; (3) alleged and claimed damages from the employer in the amount of compensation which the carrier had paid to the dependents of Payne; and (4) alleged that the employer by its conduct had waived the right, if any it had, to have the proceeding before the Industrial Accident Commission defended by the carrier, and is now estopped to claim any such right. The employer joined issue upon the counterclaim of the carrier (treating it as a cross-complaint) and pleaded in bar the decision of the Industrial Accident Commission, alleging that it involved the same issues as those set forth in the counterclaim herein, particularly the issue concerning the validity of the policy of insurance and the liability of the carrier, including the issue of alleged fraud, and that the commission's decision was in favor of the employer and against the carrier.

The trial court found in favor of the defendant and against the plaintiff upon all these issues and rendered judgment accordingly, awarding defendant damages in the amount of $5,985.

(1) *In respect to the alleged misrepresentation, concealment, and breach of warranties,* the findings of the trial court are supported by substantial evidence of the following significant facts: December 23, 1940, plaintiffs filed an application for workmen's compensation insurance with the defendant State Compensation Insurance Fund. This application listed only De Campos, Seitzinger, Fleming, and Broyer as copartners doing business under the firm name of Mary Len Mine. In fact, the partnership also included W. R. Payne

as general partner. One reason for not listing **Payne** as a partner was the fact that his credit was not good and it was feared that the defendant would not insure if he were listed as a partner. Defendant issued its policy December 30, 1940, in favor of the partnership, listing the four partners named on the application, not including Payne whose name was not listed on the application.

By the terms of this policy the defendant agreed "to be directly and primarily liable to employees covered by this Policy, or in the event of their death, to their dependents, to pay the compensation, if any, for which the insured employer is liable" and "to defend, in the name and on behalf of the Insured, claims or suits against the Insured for compensation or for damages, whether groundless or otherwise, which may be instituted against the Insured by or on behalf of employees covered by this Policy or their dependents, and to pay all costs of such defense," subject to the following conditions, among others: "The premium is to be based upon the entire remuneration earned during the Policy Period by all officials and employees except those specifically excluded from coverage under this Policy. The Insured shall keep complete and accurate records of the remuneration earned by all officials and employees classified according to the kind of work performed; such records to be kept for examination by the Fund. Failure to keep such records on the part of the Insured shall entitle the Fund to apply, to the entire remuneration earned, the premium rate applicable to the most hazardous work performed." That unless "specifically stated in the Schedule or covered by endorsement hereon, this Policy does not cover the following . . . persons . . .: If the Insured be a . . . copartnership, any member of such . . . copartnership . . ." The Policy specified as the name of the employer "Victor James De Campos, Thomas Charles Seitzinger, Marvin Robert Fleming and Albert Broyer, jointly and not severally, a copartnership."

Payne was also an employee of plaintiff. The policy required the insured to file payroll accounts of all employees, and the premium was based upon these amounts. Compensation paid to Payne was not included in the payroll accounts reported to the defendant, and therefore no premiums were paid on the earnings of Payne.

After issuance of the policy, Allen W. Lowe, one of the insurer's safety engineers, visited the mine in January and in May, 1941. He talked with one of the partners. No men-

tion was made of Payne or his membership in the partnership or of the fact that he was working in the mine. Lowe had the names of the partners as listed in the policy. Had there been any mention made of an additional partner Lowe would have reported that fact to his principal. Lowe learned and reported to his principal that one Theodore Navas had a mill on the property and was milling plaintiff's ore on a contractual basis. March 7, 1941, the insurer issued an endorsement to the policy, declaring that the policy did not extend to or cover injuries or death resulting therefrom, that might be sustained by Theodore Navas. Lowe also discovered and reported that one Buck Shibel was hauling ore for the plaintiffs upon a contractual basis. June 11, 1941, the insurer issued a similar endorsement declaring that the policy did not extend or cover injuries, or death resulting therefrom, that might be sustained by Buck Shibel. The insurer had no opportunity to issue such an endorsement in relation to Payne for it received no information concerning him until after his injury and death.

Payne was injured July 15, 1941, in the course of his employment, and died as a result of such injury. Not until after this injury did defendant know or have any information tending to indicate that Payne was a member or an employee of the insured partnership.

Defendant was induced to issue this policy of insurance to plaintiff by and through the misrepresentation that the four persons named in the policy as the employer were the only members of the copartnership, and the concealment from defendant of the fact that Payne was also a member of the partnership and one of the owners and operators of the business, and plaintiff continued to conceal that fact from defendant until after the death of Payne.

■ These facts and the findings based upon them, support the legal conclusion that defendant has a cause of action against the plaintiff to compensate ''for all the detriment proximately caused'' by plaintiff's wrongful misrepresentation and concealment and breach of affirmative and promissory warranties. (See Civ. Code, §§ 3300 and 3333.) If we view this as an action sounding in tort, it is consistent with the concept of an affirmance by the defendant of the contract of insurance. ■ If a defrauded party is induced by false representations to execute a contract, he need not disaffirm the contract. He has the option of rescinding the contract or of affirming it and of recovering damages for the fraud.

(See authorities cited in *Squire's Dept. Store, Inc.* v. *Dudum*, 115 Cal.App.2d 320, 323 [252 P.2d 418].) If this should be regarded as an action sounding in contract, it is still an action for damages. A cause of action for damages arises upon the breach of a contract (12 Am.Jur., 964, Contracts, § 388; Rest. Law of Contracts, vol. I, § 327.) Regardless of whether a contract may be treated by the injured party as terminated, a breach of the contract gives rise to a cause of action in his favor (6 Cal.Jur. 463-467, Contracts, § 276, notes 1 and 2). He does not lose his right to damages if he ineffectually seeks to disaffirm the contract. (Same, pp. 388-389, § 233, notes 6 and 7.) An action for damages rests on the theory that the contract is still in force. (*House* v. *Piercy*, 181 Cal. 247, 251 [183 P. 807]; *Cook* v. *Nordstrand*, 83 Cal.App.2d 188 [188 P.2d 282].) The two remedies (rescission and damages) are inconsistent, but in seeking rescission damages may be prayed for in the event rescission cannot be had (*Davis* v. *Rite-Lite Sales Co.*, 8 Cal.2d 675, 678-679 [67 P.2d 1039]; *Bancroft* v. *Woodward*, 183 Cal. 99, 101-102 [190 P. 445]).

In our case the insurer did not rescind. It resisted Payne's dependents' claims before the Industrial Accident Commission on the basis or theory that Payne was not covered by the policy, not that there was no policy. It lost that contention, was ordered to pay and did pay compensation to those dependents. It seeks to recoup the amount of that payment from the plaintiff-employer as damages proximately caused by the plaintiff-employer's deceit.

These facts bear a certain similarity to those which obtained in *Gise* v. *Fidelity & Casualty Co.*, 188 Cal. 429 [206 P. 624, 22 A.L.R. 1476]. There the insurer, after paying to the insured's employee the amount awarded the latter by the Industrial Accident Commission, recovered that amount from the insured as the detriment suffered by the insurer proximately caused by the insured's breach of a provision of the policy which obligated him to employ no person in violation of the law as to age. That this was the basis of recovery seems clear from the following statement of the court: "It seems only reasonable to hold, and in the absence of authority to the contrary we are of the opinion, that when the plaintiff in plain disregard of the terms of the policy of insurance employed Clark, in violation of the law as to age, the defendant, not having in any way consented thereto, and not being estopped to deny its liability in the matter in so far as the plaintiff was

concerned, a burden was cast upon defendant which it would not have had to assume, but for the unwarranted and illegal act of the plaintiff. It was not contemplated by the parties to the contract that such a situation would arise. On the contrary, it was expressly stipulated against. It seems only reasonable to hold, therefore, that the facts presented by the appeal of the defendant call for the application of the simple rule of law that one party to a contract, who is caused to suffer loss by reason of the violation of its terms by the other party thereto, may recover from the one at fault the amount he has been damaged thereby.'' (Pp. 435-436.)

That was the allowance of damages for the breach of a promissory warranty, an action sounding in contract. In our case the breach of the promissory warranty to report all wages paid employees and to pay premiums thereon might damage the insurer in the amount only of the unpaid premiums. ▇ Breach of the affirmative warranty that the four named were the only partners, as a broken or unfufilled condition, would at least afford a defense to an action by the insured upon the contract. The element of fraud is equally significant. ▇ ''Material facts intentionally concealed or false representations made in reference to them with intent to mislead the insurer is fraud, which, at his option, avoids the policy; and where it is provided that a concealment will warrant the rescission of a contract of insurance, rescission is not an exclusive remedy, as contended by respondent Commission, and the insurer may set up the concealment in an action on the policy. (32 C.J., p. 1271.) In *California etc. Co.* v. *New Zealand Ins. Co.*, 23 Cal.App. 611 [138 Pac. 960], it was held: 'Rescission is not the exclusive remedy of one who has become entitled to avoid a contract by reason of acts or omissions of the other party to it which are fraudulent in their nature. He may cancel the contract by its rescission; *or he may seek affirmative relief in a court of equity for any injury sustained by the wrongful act or omission of the other; or he may set up the fraud by way of defense to an action brought to enforce the apparent liability.* [Citations.]' '' (*General Acc. etc. Corp.* v. *Industrial Acc. Com.*, 196 Cal. 179, 189-190 [237 P. 33]; emphasis added. See, also, *Maggini* v. *West Coast Life Ins. Co.*, 136 Cal.App. 472, 478 [29 P.2d 263]; *E. A. Boyd Co.* v. *United States F. & G. Co.*, 35 Cal.App.2d 171, 181 [94 P.2d 1046].) ▇ Upon principle the insurer is not limited to setting up the fraud merely by way of defense. He has his right of action for deceit to recover the damages suf-

fered, or may seek relief in equity for injury sustained by the wrongful act of the insured, in this case the amount of the compensation which the insurer paid to the dependents of Payne. That is quite as effective as was the insurer's right of action for damages for breach of contract in the Gise case.

The plaintiff in our case would disallow the value of the Gise case as a precedent because there the contract of insurance contained a clause which declared that no default of the insured employer with respect to any of the provisions or conditions of the policy would in any way affect the right of an employee or his dependents to recover from the insurer the compensation provided by law. That clause merely precluded rescission of the contract. It did not create the right of action for damages. The latter sprang into being upon the insured's breach of his promissory warranty and, because of the clause mentioned, became the only available remedy instead of one of two alternative remedies.

Similarly, in our case, the insurer, not having rescinded, asserts its right of action for damages. Whether the failure to rescind occurred by deliberate choice of the insurer or by lapse of time and force of circumstances is immaterial. The insurer well may have deemed it good business to pay this particular risk, recoup the amount thereof from the insured, and continue with its coverage of other risks at the mine. It is not for a defaulting employer to tell the aggrieved insurer which of several available remedies it shall elect to pursue, or that if it neglects to make a timely rescission it shall forfeit its right to damages. There is here no element of estoppel involved. Indeed, the insured employer is better off than if the insured had rescinded, assuming it possessed the right to rescind. For then the employer would have been subject to an action for damages in addition to the liability for compensation (Lab. Code, § 3706) and various other potential penalties and liabilities (Lab. Code, §§ 3710-3712 and 4554).

In our case there seems no reasonable doubt concerning the materiality of the misrepresentation, concealment and breach of warranty. "Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries." (Ins. Code, § 334.) "An intentional and fraudulent omission, on the part of one insured, to communicate information of matters proving or tending to prove the falsity of a warranty, entitles the insurer

to rescind." (Ins. Code, § 338.) "If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false." (Ins. Code, § 359.) "The materiality of a representation is determined by the same rule as the materiality of a concealment." (Ins. Code, § 360.) "A statement in a policy of a matter relating to the person or thing insured, or to the risk, as a fact, is an express warranty thereof." (Ins. Code, § 441.) "A warranty may relate to the past, the present, the future, or to any or all of these." (Ins. Code, § 444.) "A statement in a policy, which imports that there is an intention to do or not to do a thing which materially affects the risk, is a warranty that such act or omission will take place." (Ins. Code, § 445.) "The violation of a material warranty or other material provision of a policy, on the part of either party thereto, entitles the other to rescind." (Ins. Code, § 447.)

This specification in the Insurance Code of circumstances under which a party to an insurance contract may rescind does not mean that rescission in any such case is the exclusive remedy. These provisions of the Insurance Code are in the nature of special provisions pertaining to insurance contracts, which are superimposed upon those provisions of law which govern contracts generally. For example, section 650 of the Insurance Code, which states that "whenever a right to rescind a contract of insurance is given to the insurer by any provision of this part such right may be exercised at any time previous to the commencement of an action on the contract," must be read in conjunction with section 338 of the Code of Civil Procedure, section 1689 of the Civil Code, and other applicable provisions. As thus read it means that "the insurer may rescind at any time within the statutory period providing no action has been commenced upon the policy." (*Federal Life Ins. Co.* v. *Cary,* 20 Cal.App.2d 257, 261 [67 P.2d 129].)

It seems clear, therefore, that the rights of rescission which the Insurance Code recognizes and limits are not in derogation of other remedial rights which are recognized and implemented by other provisions of law, including but not limited to sections 1572, 1709, 1710, 3281, 3300, and 3333 of the Civil Code.

It follows that the judgment herein correctly awarded the defendant reimbursement from plaintiff of the moneys paid to the dependents of Payne pursuant to the final decision of

the Industrial Accident Commission, unless that decision operated to preclude the defendant from later prosecuting its action for damages against the plaintiff.

In respect to the employer's claim for reimbursement for the expenditures made or incurred by it in conducting its own defense on its own behalf in the proceeding before the Industrial Accident Commission, the facts already narrated are pertinent and applicable. Reasonably soon after learning that Payne was a partner-employee of the insured copartnership, and that Payne's dependents had filed an application with the Industrial Accident Commission, defendant disavowed liability to defend the proceeding before the commission on plaintiff's behalf and so informed plaintiff. Upon receipt of such information the plaintiff undertook and prosecuted its own defense in that proceeding. For reimbursement, it relies upon the contract, invokes defendant's express promise to defend the employer against compensation claims of its employees and their dependents.　　　　But at the threshold of the suit plaintiff is confronted with its own warranties including the affirmative warranty that the four persons named as partners were the only members of the insured and that Payne was not a member. Compliance with the terms of this warranty is a condition precedent to a right of recovery insofar as this particular risk is concerned. Noncompliance defeats recovery. (See discussion of "warranties" in insurance contracts, in *McKenzie* v. *Scottish U. & N. Ins. Co.*, 112 Cal. 548, 554-555 [44 P. 922].) The conclusion is irresistible that the trial court correctly decided that plaintiff is not entitled to reimbursement from the defendant.

At this point it is desirable to make note of the fact that there appears to be some confusion upon the part of the litigants concerning the theory of the case. Both in the pleadings and in the briefs there appear statements here and there suggestive of the concept that, although bound by the contract for the benefit of the dependents of the insured employee, defendant sought to rescind that contract as between it and the plaintiff as concerns the coverage of Payne. However, the facts were all pleaded and proved, the case was fully tried, and all facets of every conceivable issue were adequately developed during the trial. We think, therefore, that this is a case in which no mere mistaken or incomplete statement of a legal theory should prevent the granting of "any relief consistent with the case made by the complaint [or answer, counterclaim, or cross-complaint] and embraced within the

issue." (Code Civ. Proc., § 580.) ■ "Moreover, the matter of pleading becomes unimportant when a case is fairly tried upon the merits and under circumstances which indicate that nothing in the pleadings misled the unsuccessful litigant to his injury." (*Buxbom* v. *Smith,* 23 Cal.2d 535, 543 [145 P.2d 305].) In this connection we may and do adopt the words of the reviewing court in the Buxbom case: "A careful review of the entire record in this case in the light of the foregoing observations compels the conclusion that the relief awarded plaintiff [defendant] is commensurate with the injuries shown to have been sustained." (P. 543.)

■ (2) *The evidence supports the finding that the proceeding before the Industrial Accident Commission did not involve the issues of misrepresentation, concealment, and breach of warranty by the insured employer as involved in the present action.* It follows that the commission's decision did not preclude consideration and determination of those issues in the present action.

By this statement, we do not mean to suggest that the Industrial Accident Commission was without jurisdiction to decide such questions if appropriately presented or necessarily involved in the proceeding before it wherein Payne's dependents appeared as applicants and the parties to the present action as codefendants. (See *French* v. *Rishell,* 40 Cal.2d 477 [254 P.2d 26], particularly including the authorities cited at p. 480, and *Truck Ins. Exch.* v. *Industrial Acc. Com.,* 36 Cal.2d 646, 652 [226 P.2d 583].) ■ The fact that the insured and the insurer were codefendants in the proceeding before the Industrial Accident Commission did not necessarily prevent the commission's determination of issues properly before it from becoming res judicata as between them as well as between either of them and the dependents of Payne. (See *Lumbermen's Mut. Casualty Co.* v. *Bissell,* 220 Mich. 352 [190 N.W. 283, 287, 28 A.L.R. 874, 876]; *Fidelity & Casualty Co. of New York* v. *Vantaggi,* 300 Mich. 528 [2 N.W.2d 490, 492]; *Employers' Liability Assur. Corp.* v. *Matlock,* 151 Kan. 293 [98 P.2d 456, 127 A.L.R. 461]. In the case last cited the court applied principles enunciated in *Employers' L. A. Corp.* v. *Industrial Acc. Com.,* 177 Cal. 771 [171 P. 935], and in *General Acc. etc. Corp.* v. *Industrial Acc. Com., supra,* 196 Cal. 179.)

For the purpose of the present discussion we may assume that the decision of the commission that the insurance contract was in effect at the time of Payne's accident and cov-

ered his dependents, impliedly determined there had been no cancellation or rescission,* and that such determination binds the insurer in all subsequent actions or proceedings, whether between it and Payne's dependents or between it and the insured employer.     However, in such a case, a determination, express or implied, that there had been no rescission would not necessarily be a determination of the issues of misrepresentation, concealment, and breach of warranty joined in the present action. In the former proceeding the insurer may not have pleaded or proved rescission or an attempt to rescind, or, his attempted rescission, if any, may have failed for lack of proper or timely notice of rescission. It will profit us, therefore, to examine the record of the former proceeding, to the extent that it was put in evidence herein, to ascertain what light it throws upon these questions.

That record includes no pleading by the insurer in which it alleged that it had rescinded the contract of insurance nor does it include any evidence that the insurer had given formal notice of rescission. There was testimony that the insurer's attorney informed the insured employer that the insurer would not undertake the defense of the employer in the proceeding before the Industrial Accident Commission. That did not necessarily import an intent upon the part of the insurer to rescind the insurance contract. The Industrial Accident Commission rendered three decisions: the first, upon the original hearing; the second, upon a rehearing; the third, in response to the remittitur from the District Court of Appeal following the decision of the latter upon review of the commission's second decision, reported in *Mary Len Mine* v. *Industrial Acc. Com.*, 64 Cal.App.2d 153 [148 P.2d 106]. In none of the decisions of the commission nor in the decision of the District Court of Appeal, do we find the subject of rescission of the insurance contract mentioned,—nothing that suggests that the question of rescission was considered or decided by the commission or by the court. Instead, those decisions reflect consideration of the question whether or not Payne, being a partner, was excluded as a risk because of the stipulation in the contract to the effect that unless "specifically stated in the Schedule or covered by endorsement hereon, this

---

*The insurer could not rescind after Payne's dependents filed their claim with the commission, if such filing was the "commencement of an action on the contract" within the meaning of section 650 of the Insurance Code and if section 650 was applicable to the insurance contract here involved.

policy does not cover the following . . . persons . . .; if the insured be a . . . copartnership, any member of such . . . copartnership . . ." The District Court of Appeal found this clause ambiguous and, applying the principle that an ambiguity in an insurance contract should be construed most strongly against the insurer, determined that the policy included Payne as a partner who was working for wages irrespective of profit. In addition, there was evidence before the commission which indicated that the insurer recognized the continued existence and effectiveness of the policy by collecting and receiving from the insured employer premiums covering at least the remainder of the policy year which ended December 30, 1941, approximately 5½ months after the accident which caused Payne's death. Plaintiff introduced in evidence a large portion of the transcript of the hearings held by the commission, including all but 37 of 316 pages of the record of proceedings had after the commission had granted a rehearing. Examination of that transcript does not indicate that the commission was considering any question of fraud or rescission. Indeed, it was the employer's counsel who sought, unsuccessfully, to bring such questions into the case, saying, "there is an issue on insurance contracts; the direct issue is between these insured employers and the . . . Fund as to that policy . . ." (Ex. 8 herein; Tr. of Feb. 26, 1943, p. 12; upon rehearing.) The referee replied, "We are only concerned . . . with the status up to the time of the injury." The insurer's attorney commented, "That is our position." (*Idem*, p. 12.) After some discussion the referee ruled that any action taken by the parties to the insurance contract after the date of the injury could not affect the person for whose benefit the policy was made "because it is only up to the date of injury that the status as it existed concerns us." (*Idem*, p. 13.) Later, the employer's counsel asserted, "The court has indicated many times the commission has jurisdiction to determine controversies concerning insurance policies." The referee ruled, "They have, but it isn't before us." (*Idem*, p. 18.) These and other portions of the transcript support an inference that the commission's referee did not consider that he had before him for consideration and determination any issues between the employer and the insurer concerning fraud, concealment, breach of contract, or rescission. At the trial in the superior court, plaintiff did introduce some oral testimony to the effect that such questions were in issue before the commission. That was but secondary evidence,

the conclusion or opinion of the witness. Some of it was limited by the trial court to the single issue of the reasonable value of the services rendered by the employer's counsel in the proceedings before the commission. It was not of any considerable weight and at most produced a mere conflict in evidence. Plaintiff introduced documentary evidence indicating that the insurer did seek to raise these issues, or some of them, before the District Court of Appeal upon review of the commission's decision. That would be too late if timely presentation had not been made to the commission. The absence of reference thereto in the reviewing court's decision suggests that that court so viewed it. This record amply supports the trial court's finding that the decision of the Industrial Accident Commission was not res judicata of the issues of misrepresentation, concealment and breach of warranty. The judgment must be affirmed.

In view of our conclusions upon the two main points upon this appeal it is not necessary to consider other questions discussed by the parties.

The judgment appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied Feb. 11, 1954.

Upon stipulation, appellants' petition for a hearing by the Supreme Court was withdrawn March 5, 1954.