[No. E033550. Fourth Dist., Div. Two. Nov. 17, 2004.]

CENTURY SURETY COMPANY, Cross-complainant and Appellant, v. CROSBY INSURANCE, INC. et al., Cross-defendants and Respondents.

**COUNSEL**

Murchison & Cumming and Edmund G. Farrell II for Cross-complainant and Appellant.

Newmeyer & Dillion, Mark S. Himmelstein, Steven S. Wang and Craig S. Robson for Cross-defendants and Respondents.

**OPINION**

**HOLLENHORST, Acting P. J.**—Appellant Century Surety Company (Century) appeals from the trial court's sustaining of a demurrer without leave to amend as to Century's second amended cross-complaint against Crosby Insurance, Inc., and Brent Jetton (hereafter, collectively referred to as Crosby) for fraud, negligence, and negligent misrepresentation. We conclude that the second amended cross-complaint states a cause of action for fraud and negligence, and the trial court therefore abused its discretion in sustaining the demurrer without leave to amend as to those causes of action. The second amended cross-complaint, however, omits an essential element of a cause of action for negligent misrepresentation, and Century has not shown that it could amend its complaint to remedy the deficiency. We therefore affirm the judgment with respect to that cause of action.

## FACTS AND PROCEDURAL BACKGROUND

In the underlying action (the Charlebois action), Baroco West, Inc., Ralph Roach, Rick Bausher, and Highpoint Development and Construction (hereafter referred to collectively as Baroco) were named as defendants in a complaint filed on July 1, 1998, seeking damages for construction defects against Baroco as the general contractor of a single-family residence. Baroco tendered its defense to Century, and Century, as Baroco's liability insurer, initially undertook the defense of the Charlebois action under a reservation of rights.

After Century determined that information in Baroco's insurance application concerning its loss history was false, Century withdrew its defense, and Baroco sued Century and others not parties to this appeal. Baroco's complaint alleged claims of breach of written contract and of the implied covenant of good faith and fair dealing and included a request for declaratory relief against Century. The complaint also alleged claims of negligence by an insurance agent and breach of fiduciary duty against Crosby.

Century filed its answer to Baroco's complaint and also filed a cross-complaint for declaratory relief, reimbursement of defense costs, and rescission against Baroco. Crosby filed a motion for summary judgment as to Baroco's complaint. The motion was unopposed; it was granted on June 6, 2002, and judgment was thereafter entered.

Century filed a cross-complaint against Crosby. Century's first amended cross-complaint against Crosby alleged that: (1) Crosby was an insurance broker; (2) Brent Jetton was Crosby's agent and was the retail insurance broker for the policy that Century sold to Baroco; (3) although Crosby knew that Baroco was doing work as a general contractor, Crosby submitted an application for insurance to Century stating that Baroco worked only as a drywall contractor; (4) in reliance on this representation, Century underwrote, issued, and priced a policy; and (5) Century had expended funds in connection with the investigation and defense of the Charlebois action, and Baroco was demanding that Century provide it with a defense and indemnity in that action.

Crosby filed a demurrer to the first amended cross-complaint, arguing that the claims for broker negligence and/or misrepresentation and equitable indemnity were barred by res judicata; the claims for fraud were barred by collateral estoppel; the causes of action for equitable contribution and declaratory relief were defective; and the fraud claim was inadequately pleaded. The trial court sustained the demurrer with leave to amend.

On November 13, 2002, Century filed its second amended cross-complaint (hereafter, referred to as the cross-complaint), adding new facts to supports its causes of action. The following material allegations appear in Century's cross-complaint:

In 1995, Crosby, an insurance broker, had prepared and submitted to Century an application for liability insurance for Baroco. The application for insurance classified Baroco as a drywall contractor with potential subcontractor work limited to drywall contracting. Based upon that application, Century issued a policy insuring Baroco. Baroco tendered its defense in the Charlebois action to Century, and Century provided Baroco a defense under reservation of rights. After investigating the claim and determining that there was no potential for coverage under the policy for the claims asserted, Century withdrew its defense of Baroco in the Charlebois action.

Century attached to the cross-complaint the application for insurance that Crosby submitted to Century on behalf of Baroco. The application states that Baroco was previously insured by Farmers Insurance. Century also attached to the cross-complaint a letter purporting to be from "DAN PLESETZ, AGENT" for "THE FARMERS INSURANCE GROUP OF COMPANIES" that refers to the insurance policy number identified in the application and states that "there have been no known losses for the two year period we have had the above referenced policy insured." Century alleged that it had determined through its investigation that Plesetz denied having written or prepared the letter or having any knowledge of the referenced policy number. Century further alleged that Brent Jetton, who was an acquaintance of Plesetz, had had access to Plesetz's office with no other person present, had obtained unauthorized samples of Plesetz's letterhead, and had used that letterhead to forge the letter purporting to be from Plesetz.

Crosby filed a demurrer to the cross-complaint, arguing that it did not owe Century a duty in negligence, and that Century could not maintain an action in fraud against Crosby, but that Century's exclusive remedy was against its insureds. The trial court sustained the demurrer without leave to amend, and judgment of dismissal of the cross-complaint was entered.

## DISCUSSION

### I. Standard of Review

When we review a judgment of dismissal following the trial court's sustaining of a demurrer, " '[w]e treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.'

[Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

## II.   Cause of Action for Fraud and Deceit

### A.   *Century Has Adequately Pleaded a Cause of Action for Fraud and Deceit*

■   The following elements must be pleaded to state a cause of action for fraud: (1) a misrepresentation of a material fact; (2) knowledge of falsity; (3) intent to deceive and induce reliance; (4) justifiable reliance on the misrepresentation; and (5) resulting damages. (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 481 [80 Cal.Rptr.2d 329].) Here, Century's second amended cross-complaint alleged that the plaintiffs' actual insurance application was attached to the cross-complaint; the application included a false written statement regarding the plaintiffs' loss history; and Crosby had made the false written statement. Thus, the cross-complaint alleged a misrepresentation of a material fact.

The cross-complaint alleged that Crosby made the false written statement intentionally and with knowledge of its falsity. Thus, the cross-complaint alleged the element of scienter.

The cross-complaint alleged that Crosby made the false written statement with the intent to cause Century to issue a policy of insurance to the plaintiffs. Thus, the cross-complaint alleged the element of intent to deceive and to induce reliance.

The cross-complaint alleged that Century had no reason to suspect the falsity of the statement, did not know the statement was false, and relied on the statement in issuing a policy of insurance to the plaintiffs. The cross-complaint further alleged that the plaintiffs' prior loss history was a material element in Century's decision to issue the policy. Thus, the cross-complaint alleged the element of reasonable reliance.

Finally, the cross-complaint alleged that as a result of the misrepresentation, it incurred costs of investigation and defense of the Charlebois action as

well as the loss of a higher premium that it would otherwise have charged. Thus, the cross-complaint alleged the element of damages. The cross-complaint therefore alleged all of the requisite elements of a cause of action for fraud.

B. *California Case Law Does Not Preclude an Insurer's Cause of Action Against a Broker for Fraud and Deceit Arising out of an Application for Insurance*

Crosby contends, however, that as a matter of law an insurance company may not maintain an action against a broker based on fraud and deceit arising out of an application for insurance. Rather, Crosby argues, only the insured is responsible for any misrepresentation in the application made by the broker.

Crosby relies on a line of cases in which California courts held that an insured was responsible for the acts of the agent, including misrepresentations in an insurance application, when the issue was the insurer's liability to the insured. In *Solomon v. Federal Ins. Co.* (1917) 176 Cal. 133 [167 P. 859] (*Solomon*), the plaintiff hired an insurance broker to obtain insurance for a used 1907 automobile he had purchased for $2,500. The agent filled out an application for insurance, stating that the automobile was a 1909 model purchased for $3,500. Relying on the application, Federal Insurance Company (Federal) issued an insurance policy to the plaintiff. After the plaintiff's car was destroyed by fire, the plaintiff sought to recover under the insurance policy, but Federal disclaimed liability on the ground that the destroyed car did not match the car described in the application. The trial court found for the plaintiff, but the Supreme Court held that the misrepresentations in the application entitled Federal to rescind the policy. In response to the plaintiff's argument that the misrepresentations had been made by the broker, not by the plaintiff, the court stated: "It is well settled that where, in circumstances such as are presented here, an insurance agent requests insurance from a company which he does not represent, he is acting for the insured, who is responsible for misrepresentations in the application made out by the broker." (*Solomon, supra*, 176 Cal. at p. 138; see also *Purcell v. Pacific Automobile Ins. Co.* (1937) 19 Cal.App.2d 230, 233 [64 P.2d 1114] [stating, in reaching a similar conclusion on similar facts, "Ordinarily one who procures another to obtain insurance for him thereby makes such person his agent and assumes full responsibility for his acts."].)

The common element of these cases is that they address the *insurer's* liability to the *insured* when an insurance policy was issued in reliance on misrepresentations in the application made by the broker or agent. These cases do not address the insurer's potential recovery from the broker when the insurer has incurred costs in defending an insured whose policy was later

shown to have been obtained in reliance on the broker's misrepresentations. The broker was not named as a defendant in *Solomon* or *Purcell*, and no issue was raised in those cases as to any potential liability of the broker to the insurer for the broker's misrepresentations. Thus, *Solomon* and *Purcell* do not create any rule that exempts insurance brokers from the consequences of their own fraud.

Indeed, it would be an unreasonable, if not perverse, result if the law allowed an insurer no remedy against a broker who has, as is alleged in the cross-complaint, actively forged documents to support an insurance application. (See Civ. Code, § 1709 ["One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."]; cf. Civ. Code, § 1668 ["All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, . . . are against the policy of the law."].)

We observe that courts in other jurisdictions have imposed liability on an insurance broker in an insurer's action to recover for losses incurred as a result of the broker's fraud. (*Midland Ins. Co. v. Markel Serv. Inc.* (5th Cir. 1977) 548 F.2d 603, 607 [applying Texas law: holding that substantial evidence supported the jury's finding that an insurance broker misrepresented the facts to the insurer concerning the limits of the insured's primary liability coverage, that such misrepresentations were material, and that the insurer's reliance on the misrepresentations resulted directly in the loss to the insurer]; *Putnam Resources v. Pateman* (1st Cir. 1992) 958 F.2d 448 [applying New York law: holding that an insurer was required to establish a claim of intentional misrepresentation against an insurance broker by clear and convincing evidence]; *Westfield Ins. v. Yaste, Zent & Rye Agency* (Ind.Ct.App. 2004) 806 N.E.2d 25 [holding that questions of material fact precluded summary judgment on an insurer's claim against a broker for actual fraud].) One source has stated the principles as follows: "[S]ince a broker that is not the insurer's agent owes no fiduciary duty to the insurer, the broker is not liable for an alleged failure to reveal known facts. However, a broker will be held liable in tort to an insurer that issued a policy based on fraudulent material misinformation or the withholding of facts, where the broker knew, or reasonably should have known, that disclosure of the truth would have resulted in the insurer rejecting the application." (43 Am.Jur.2d (Supp. 2004) Insurance, § 158, fns. omitted.) We find these authorities persuasive. California case law does not provide any basis for exempting an insurance broker from the consequences of its own fraud.

C. *The Insurance Code Does Not Relieve an Insurance Broker of Liability to an Insurer for the Broker's Fraud in an Insurance Application*

Crosby next argues that the Insurance Code charges the insured, not the broker, with the duty to disclose material information and with the responsibility for misrepresentations made to the insurer. Crosby's role in the transaction was alleged to be that of an insurance broker, not an agent. An insurance broker is defined by statute as "a person who, for compensation and on behalf of another person, transacts insurance other than life insurance with, but not on behalf of, an insurer." (Ins. Code, §§ 33, 1623.) "Put quite simply, insurance brokers, with no binding authority, are not agents of insurance companies, but are rather independent contractors, . . ." (*Marsh & McLennan of Cal. Inc. v. City of Los Angeles* (1976) 62 Cal.App.3d 108, 118 [132 Cal.Rptr. 796].)

Crosby cites a number of cases in support of the proposition that the insurance broker's only duty is toward the insured. For example, in *Kurtz, Richards, Wilson & Co. v. Insurance Communicators Marketing Corp.* (1993) 12 Cal.App.4th 1249, 1258 [16 Cal.Rptr.2d 259], the court held that when an insurance agent intentionally misrepresents facts on an application for insurance presented on behalf of a client who is unaware of those misrepresentations, the agent breaches the duty of reasonable care owed to the client. The court was not called upon, however, in *Kurtz* or in the other cases Crosby has cited, to determine the liability of a broker to the insurer when the broker intentionally misrepresents facts in an application for insurance. Thus, those cases do not stand for the proposition that an insurer has no remedy against an insurance broker for intentional misrepresentations. Again, we conclude that California case law does not provide any basis for exempting an insurance broker from the consequences of its own fraud.

D. *The Insurance Code Does Not Establish an Exclusive Remedy of Rescission for a Broker's Fraud in an Insurance Application*

Crosby argues that the exclusive remedy available to Century is that of rescission of the policy under Insurance Code sections 330,[1] 331,[2] 332,[3]

---

[1] "Neglect to communicate that which a party knows, and ought to communicate, is concealment." (Ins. Code, § 330.)

[2] "Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance." (Ins. Code, § 331.)

[3] "Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the.other has not the means of ascertaining." (Ins. Code, § 332.)

334,[4] 356,[5] 358,[6] 359,[7] and 360.[8] In addition, an intentional and fraudulent omission, "on the part of one insured, to communicate information of matters proving or tending to prove the falsity of a warranty, entitles the insurer to rescind." (Ins. Code, § 338.)

██ California courts have made clear that the right of rescission established in the Insurance Code is not an insurer's exclusive remedy against an insured. (*De Campos v. State Comp. Fund* (1954) 122 Cal.App.2d 519, 525–526 [265 P.2d 617] (*De Campos*); see also *Williamson & Vollmer Engineering, Inc. v. Sequoia Ins. Co.* (1976) 64 Cal.App.3d 261 [134 Cal.Rptr. 427] [stating that the remedy of rescission for fraud under the Insurance Code is not in derogation of other remedies recognized under other provisions of law.] As the court stated in *De Campos*, "This specification in the Insurance Code of circumstances under which a party to an insurance contract may rescind does not mean that rescission in any such case is the exclusive remedy. These provisions in the Insurance Code are in the nature of special provisions pertaining to insurance contracts, which are superimposed upon those provisions of law which govern contracts generally. . . . [¶] It seems clear, therefore, that the rights of rescission which the Insurance Code recognizes and limits are not in derogation of other remedial rights which are recognized and implemented by other provisions of law, . . ." (*De Campos*, *supra*, 122 Cal.App.2d at p. 529.)

██ Moreover, the Insurance Code sections that Crosby cites are silent with respect to any remedies available to an insurer against an insurance broker for intentional misrepresentations in an application for insurance. Neither the Insurance Code sections cited nor the case law Crosby has relied on establishes that an insurer lacks a remedy against an insurance broker for intentional misrepresentations in an insurance application. We conclude that the Insurance Code sections cited above do not preclude an insurer's action against a broker for misrepresentation. Thus, the trial court abused its discretion in sustaining the demurrer as to the cause of action for intentional misrepresentation.

---

[4] "Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries." (Ins. Code, § 334.)

[5] "The completion of the contract of insurance is the time to which a representation must be presumed to refer." (Ins. Code, § 356.)

[6] "A representation is false when the facts fail to correspond with its assertions or stipulations." (Ins. Code, § 358.)

[7] "If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false." (Ins. Code, § 359.)

[8] "The materiality of a representation is determined by the same rule as the materiality of a concealment." (Ins. Code, § 360.)

### III. Cause of Action for Negligence

A. *Century Has Adequately Pleaded the Elements of a Cause of Action for Negligence*

■ The following elements must be pleaded to state a cause of action for negligence: (1) a legal duty of care toward the plaintiff; (2) a breach of that duty; (3) legal causation; and (4) damages. (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 286–287 [73 Cal.Rptr.2d 596].) In its fourth cause of action in its cross-complaint, identified as "Broker Negligence and/or Misrepresentation," Century alleged that (1) Crosby and Jetton owed a duty toward Century "to properly prepare and process BAROCO'S Application for insurance in an honest, truthful and accurate manner, by fully divulging in good faith to CENTURY all facts within their knowledge material to the contract which CENTURY had no means of ascertaining. CROSBY owed a duty not to defraud CENTURY." The cross-complaint further alleged, "CROSBY intentionally, carelessly, and/or negligently failed to prepare and process the Application by failing to fully and truthfully divulge to CENTURY BAROCO's true and accurate loss history." The cross-complaint pleaded reliance on the application and resulting damages. Thus, the cross-complaint pleaded all the necessary elements to establish a cause of action for negligence.

B. *Public Policy Supports Imposing a Duty of Care in Preparing an Application for Insurance*

Crosby asserts that an insurance broker has no duty of care to an insurer and therefore, as a matter of law, cannot be held liable to an insurer for negligence or negligent misrepresentation. "The question of the existence of a legal duty of care in a given factual situation presents a question of law which is to be determined by the courts alone." (*Nichols v. Keller* (1993) 15 Cal.App.4th 1672, 1682 [19 Cal.Rptr.2d 601].)

California courts have not ruled on the duty an insurance broker owes to an insurer under circumstances similar to those of the present case.[9] However,

---

[9] The issue likewise appears to have received little attention in other jurisdictions. However, the Supreme Judicial Court of Massachusetts has held that a broker may be liable in negligence for submitting a materially false insurance application. (*St. Paul Surplus v. Feingold & Feingold* (1998) 427 Mass. 372, 376–377 [693 N.E.2d 669, 672].) The court rejected the argument that its holding would "create potential liability for all brokers and independent insurance agents for material mistakes in an insurance application signed only by an insured." (*Ibid.*) The court explained, "We see nothing inappropriate in holding a broker liable to an insurer which issued a policy based on material misinformation that the broker, negligently or with reckless disregard for the truth, placed on an insurance application, where the broker knew, or reasonably should have known, that disclosure of the truth would have led the insurer

the Supreme Court has set forth the factors for determining when a party to a transaction owes a duty to a third party. (*Biakanja v. Irving* (1958) 49 Cal.2d 647 [320 P.2d 16] (*Biakanja*).) In *Biakanja*, the intended beneficiary under an invalid will sued the notary public whose negligence had caused the will to be refused admittance to probate. The trial court entered judgment in favor of the plaintiff beneficiary, and the notary public appealed. The Supreme Court held that to sue for negligence, a plaintiff need not prove privity of contract with the defendant. The court also announced the standard for determining whether a duty of care is owed: "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (*Id.* at p. 650.)

In *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104 [128 Cal.Rptr. 901], the court extended the *Biakanja* rule to hold that a lawyer owed a duty of care to a third party when the lawyer provided a document, which contained a negligent misrepresentation, to a principal with the intent that the document be relied upon by the third party. The court explained, "[D]efendants undertook, on behalf of their clients, to assist in securing loans from various persons, including plaintiff, for the benefit of BBC. The defendants' opinion concerning the status of the partners was rendered for the purpose of influencing plaintiff's conduct, and harm to him was clearly foreseeable. We have no difficulty, therefore, in determining that the issuance of a legal opinion intended to secure benefit for the client, either monetary or otherwise, must be issued with due care, or the attorneys who do not act carefully will have breached a duty owed to those they attempted or expected to influence on behalf of their clients." (*Id.* at p. 111.)

Here, likewise, the factors set forth in *Biakanja* support finding a duty on the part of an insurance broker toward an insurer under the circumstances alleged in the second amended complaint. First, the transaction of applying for an insurance policy is intended to benefit the insurer as well as the insured and is designed to influence the insurer's conduct in issuing an insurance policy. Second, harm from misrepresentations in an insurance application, such as the precise harm alleged to have occurred in this case, is easily foreseeable. Third, injury is certain in that the insurer incurred costs in defending an insurance claim on a policy that would not have issued but for

___

to reject the application." (*Id.* at p. 377; but see *Westfield Ins. v. Yaste, Zent & Rye Agency, supra,* 806 N.E.2d 25 [affirming summary judgment on an insurer's negligence-based claims against a broker and holding that the broker owed no duty toward the insured].)

the misrepresentations in the application. Fourth, the misrepresentations in the application were material to the insurer's decision to issue the policy and thus were closely connected to the ensuing injury. Fifth, under the circumstances alleged, the factor of moral blame supports a finding of duty. Finally, imposing liability on insurance brokers for misrepresentations in insurance applications would act as a deterrent in preventing future harm.

■ We conclude that policy reasons support imposing a duty on insurance brokers to exercise reasonable care in preparing insurance applications under the facts alleged in the cross-complaint. We emphasize that our holding should not be construed as treating an insurance broker as a guarantor of information in an insurance application or as imposing a duty on a broker to independently investigate information provided by the insured. However, when the broker knows of actual misstatements, the broker may be held liable for transmitting those misrepresentations in an insurance application knowing the insurer will reasonably rely on them. Thus, the trial court abused its discretion in sustaining the demurrer as to the cause of action for negligence.

## IV.   Cause of Action for Negligent Misrepresentation

■ The fourth cause of action is also identified as negligent misrepresentation. The following elements must be pleaded to state a cause of action for negligent misrepresentation: (1) a false statement of a material fact that the defendant honestly believes to be true, but made without reasonable grounds for such belief, (2) made with the intent to induce reliance, (3) reasonable reliance on the statement, and (4) damages. (See *Cicone v. URS Corp.* (1986) 183 Cal.App.3d 194, 208, 211 [227 Cal.Rptr. 887].) Century's allegations supporting this cause of action are set forth above in the discussion of the negligence cause of action. Notably, however, Century did not allege that Crosby and Jetton made a false statement of material fact, honestly believing it to be true, but without reasonable grounds for such belief. Thus, Century's pleading omits an essential element of a cause of action for negligent misrepresentation. Another court, on similar facts, concluded that such an omission was fatally defective to a claim of negligent misrepresentation. (*Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1332–1333 [231 Cal.Rptr. 355] (*Wilhelm*) [sustaining a demurrer without leave to amend as to an action for negligent misrepresentation when the complaint did not allege that false representations were made honestly believing they were true, but having no reasonable ground for such belief, and when the misrepresentations were not the proximate cause of any harm.].)

■ Century has not argued on appeal that it has the ability to amend its pleading to correct the omission.[10] As noted above, the burden of proving a reasonable possibility of amending the complaint to state a cause of action "is squarely on the plaintiff." (*Blank v. Kirwan, supra,* 39 Cal.3d 311, 318.) Thus, we conclude the trial court did not abuse its discretion in sustaining the demurrer as to the cause of action for negligent misrepresentation.

## DISPOSITION

The judgment is affirmed with respect to the cause of action for negligent misrepresentation. In all other respects, the judgment is reversed. Century shall recover its costs on appeal.

Richli, J., and Ward, J., concurred.

---

[10] As the court noted in *Wilhelm, supra,* 186 Cal.App.3d at page 1333, footnote 4, "Apparently, a plaintiff can allege causes of action for both intentional and negligent misrepresentation as 'there is some authority holding that a plaintiff should be able, on information and belief, to plead inconsistent *facts* . . . .' (*Roberts v. Ball, Hunt, Hart, Brown & Baerwitz, supra,* 57 Cal.App.3d at p. 110, italics added.)"