372                                  427 Mass. 372 (1998)

St. Paul Surplus Lines Insurance Company *v.* Feingold & Feingold Insurance Agency, Inc.

## St. Paul Surplus Lines Insurance Company & another[1] *vs.* Feingold & Feingold Insurance Agency, Inc.[2]

Worcester. March 5, 1998. - May 4, 1998.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, & Marshall, JJ.

*Negligence,* Insurance agent. *Consumer Protection Act,* Insurance, Damages, Interest. *Insurance,* Liquor liability insurance. *Interest. Practice, Civil,* Interest.

This court concluded that an independent insurance broker, acting solely as agent for an insured, could be held liable, on theories of negligence, misrepresentation, and violation of G. L. c. 93A, § 11, to an insurer which issued a policy based on material misinformation that the broker negligently, or with reckless disregard for the truth, placed on an insurance application signed only by the insured, where the broker knew, or reasonably should have known, that disclosure of the truth would have led the insurer to reject the application. [375-377]

In a third-party complaint against a broker, the third-party plaintiff insurer was entitled to prejudgment interest under G. L. c. 231, §§ 6B and 6C, from the dates on which it actually incurred losses in settling the underlying action, rather than from the earlier date on which the insurer had commenced its third-party claim against the broker or the date on which the underlying action was commenced. [377-378]

Civil action commenced in the Superior Court Department on February 27, 1992.

The case was tried before *Daniel F. Toomey,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Michael R. Byrne* (*Robert P. Powers* with him) for the defendant.

*Edward J. McDonough, Jr.,* for the plaintiffs.

*Richard L. Neumeier,* for Professional Independent Insurance Agents of Massachusetts, amicus curiae, submitted a brief.

---

[1]St. Paul Fire & Marine Insurance Company. We shall refer to a single plaintiff.

[2]The original Superior Court action was entitled Lorraine M. Civitarese & others *vs.* Chopsticks Restaurant of Leominster, Inc., & others. St. Paul's third-party complaint is the only matter before this court.

WILKINS, C.J. In 1990, the third-party plaintiff (St. Paul) issued a policy of liquor liability insurance to Chopsticks Restaurant of Leominster, Inc. (Chopsticks). St. Paul reasonably relied on information in an application for insurance signed by the president of Chopsticks and prepared by the defendant (Feingold), an independent insurance broker acting for Chopsticks.

The application contained materially false information. If the true facts had been disclosed to St. Paul, it would not have issued the policy. Among the false information on the application were the following statements: (1) Chopsticks's closing hour was 11 P.M. (it was in fact 12:30 A.M. on weekdays and 1:30 A.M. on weekends); (2) Chopsticks had no doorman (it did); (3) Chopsticks had no entertainment (it had a live band three nights a week); (4) there was no dancing (there was a dance floor that was regularly used); (5) there was no television set for patrons (there were two, one of which was a large screen suspended above the dance floor); (6) Chopsticks's annual sales of alcoholic beverages was $180,000 (Feingold knew that Chopsticks's sales for the year ended October 8, 1988, had been more than $341,000); and (7) Chopsticks's annual liquor liability premium was $9,000 (for the 1988-1989 policy year the premium paid to the Liquor Liability Joint Underwriting Association for Chopsticks's coverage had been more than $17,900).[3]

During the policy period, a woman was injured in a motor vehicle accident allegedly caused by the negligence of a driver to whom Chopsticks had overserved alcoholic beverages. A tort action was commenced in February, 1992, against Chopsticks and St. Paul. By third-party complaints, Feingold and the allegedly negligent driver were added as parties. Among the claims was St. Paul's third-party complaint against Feingold alleging that Feingold intentionally misrepresented material facts on Chopsticks's application for insurance, negligently caused the misstatements or errors in the application, and violated G. L. c. 93A. St. Paul also cross-claimed against Chopsticks seeking rescission or indemnification because of alleged wilful and intentional misstatements and errors in the application.

Before trial, most claims were settled but not St. Paul's claims against Feingold. St. Paul made payments in settlement of the underlying tort claims against Chopsticks. Disagreements

---

[3]The premium was to be based on Chopsticks's liquor receipts determined ultimately by an audit.

between St. Paul and Chopsticks were among those settled. In a partial settlement agreement, Feingold acknowledged that the agreement did not limit or restrict St. Paul's right to pursue its claims against Feingold.

St. Paul did pursue those claims. Feingold agreed that the amounts that St. Paul paid in settlement of the underlying tort claims were fair and reasonable. The case was tried on the question of Feingold's liability to St. Paul. A jury found in a special verdict that Feingold had been negligent in its handling of the application for insurance and that that negligence proximately caused financial injury to St. Paul. The jury also found that Feingold knowingly made false representations to St. Paul concerning an important fact or facts, that Feingold intended or expected that St. Paul would rely on the representations, and that St. Paul reasonably relied on the misrepresentations to its financial detriment. The judge, who had reserved to himself the count based on St. Paul's G. L. c. 93A claim, ruled that Feingold had violated G. L. c. 93A, § 11, that Feingold's conduct had been wilful and knowing, and that an award of double damages was appropriate. Feingold appealed from judgments entered on the jury's special verdict and on St. Paul's G. L. c. 93A claim.

The Appeals Court, in an unpublished memorandum and order, affirmed the judgments except the trial judge's decision to calculate interest in St. Paul's claim against Feingold from the date of commencement of the tort action rather than from the later date on which St. Paul actually paid amounts pursuant to the settlement agreement. See 43 Mass. App. Ct. 1105 (1997). We granted Feingold's application for further appellate review to consider its claim that it had no duty to St. Paul with respect to misstatements in an application that only Chopsticks, the insured, signed. Feingold asserts that we should not hold an independent broker, acting solely as agent for an insured, liable in tort to an insurer for negligent or intentional misrepresentations in a policy application signed only by the insured. We agree with the Appeals Court that the facts of this case, involving Feingold's knowing participation in the delivery of misinformation to St. Paul, warrant the imposition of liability on Feingold.

The Appeals Court decided a variety of issues. We agree with its conclusions on issues that we do not discuss, none of which would have prompted us to grant further appellate review. We

shall discuss Feingold's claim that it should not have been found liable for negligence, for intentional misrepresentation, or under G. L. c. 93A. Feingold's burden is to demonstrate that none of these three theories warrants finding it liable to St. Paul. Feingold does not point to a particular legal error that the judge committed. We nevertheless treat Feingold as asserting that it was entitled to a directed verdict or judgment notwithstanding the verdict on the negligence and misrepresentation counts and to a ruling that the evidence did not warrant a finding of liability under G. L. c. 93A of single, much less double, damages. Feingold's argument should have, but did not, focus on the evidence favorable to St. Paul.

Before we consider these questions, we must establish a point that bears on Feingold's liability to St. Paul. St. Paul had a claim against Chopsticks for material misrepresentations which, if valid, would have relieved St. Paul of its obligations under Chopsticks's policy and thus make any fault of Feingold largely inconsequential because that fault would have caused no harm to St. Paul.[4] The settlement agreement expressly preserved St. Paul's claim against Feingold in spite of St. Paul's abandonment of its claim against Chopsticks. The Appeals Court adequately dealt with this subject, properly rejecting Feingold's claims that St. Paul waived its rights against Feingold and that Feingold did not cause St. Paul's losses. If Feingold had believed that the settlement was intended to bar or limit St. Paul's claim against Feingold, the agreement would have said so, and obviously there would have been no need for the trial of that issue.

To assess Feingold's claim that the evidence did not warrant a finding that it was liable to St. Paul, we recite the crucial evidence. We have already listed the numerous errors on the application for insurance which Feingold prepared and sent to St. Paul after Chopsticks's president signed it. The jury were warranted in finding that, if the application had been accurate, St. Paul, which was seeking to underwrite only certain kinds of restaurants, would not have issued a liquor liability policy to Chopsticks. An employee of Feingold put the misinformation on the application. Chopsticks's owner and president was born in China and at times had trouble reading and understanding English. He signed the application in the presence of Feingold's

---

[4]St. Paul might have a claim against Feingold for expenses incurred in gaining relief from Chopsticks's material misrepresentations.

president without reading it, and handed it back to him.[5] Feingold had information, in its files and from personal observation by its president, that there were errors in the application. Feingold's president knew that there was dancing at Chopsticks and had visited its premises. The jury could infer that he knew of the television screen and live entertainment at Chopsticks and that disclosure of these facts would cause St. Paul to decline coverage, as another insurer already had. Feingold knew that the representations of the amount of Chopsticks's annual sales of alcoholic beverages and of its annual premiums were far below what should have been disclosed.

The evidence warranted a finding of negligence. See *Carolina Cas. Ins. Co.* v. *Cummings Agency, Inc.*, 110 F.3d 1, 2 (1st Cir. 1997)[6]; Restatement (Second) of Torts § 552(1) (1977).[7] The evidence also permitted an inference that the misrepresentations were intentional, as the jury found, and certainly permitted the conclusion (thus barring allowance of a directed verdict) that Feingold wilfully disregarded the facts, which is tantamount to fraud. See *Kozdras* v. *Land/Vest Props., Inc.*, 382 Mass. 34, 41 (1980); *State St. Bank & Trust Co.* v. *Beale*, 353 Mass. 103, 104 (1967). Such conduct also warrants the award of double damages under G. L. c. 93A. See *Datacomm Interface, Inc.* v. *Computerworld, Inc.*, 396 Mass. 760, 780 (1986); *Shaw* v. *Rodman Ford Truck Ctr., Inc.*, 19 Mass. App. Ct. 709, 711-712 (1985). Feingold sent the defective application to St. Paul, knowing that it was seriously inaccurate and could reasonably mislead St. Paul. The fact that only Chopsticks signed the application does not, as a matter of law, relieve Feingold from the consequences of its negligence and misrepresentations.

Feingold and the amicus express concern that, if we uphold the judgments, we will create potential liability for all brokers

---

[5]It is irrelevant that there was an identical application submitted later because the first application was not dated and St. Paul insisted on having a dated application.

[6]"Suppose a broker actually knows facts about his customer that he knows would make him unacceptable, and knows that the would-be insured is filing a false application. Should not the insurer have a right to expect good faith?"

[7]"One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

and independent insurance agents for material mistakes in an insurance application signed only by an insured. We see nothing inappropriate in holding a broker liable to an insurer which issued a policy based on material misinformation that the broker, negligently or with reckless disregard for the truth, placed on an insurance application, where the broker knew, or reasonably should have known, that disclosure of the truth would have led the insurer to reject the application.

The Appeals Court disagreed with the trial judge's determination that prejudgment interest should run from the commencement of the action. The action was commenced on February 27, 1992, by the tort claimant suing Chopsticks and St. Paul. St. Paul's third-party complaint against Feingold was filed on September 30, 1992. The judgment on the tort claims against Feingold directs that the interest is to run from that date. The judgment awarding double damages under G. L. c. 93A, however, directs that interest is to run from February 27, 1992. Interest should not run from a date earlier than the date on which St. Paul filed its complaint against Feingold. For the purposes of G. L. c. 231, § 6B, which provides that prejudgment interest in a tort action accrues "from the date of commencement of the action," September 30, 1992, is the earliest acceptable date from which interest may be calculated.

The question is whether interest should run from some later date or dates because St. Paul did not incur the losses for which it seeks recovery until later, when it made payments in response to the settlement that was reflected in a stipulation of dismissal filed on December 1, 1992. The parties do not indicate precisely when St. Paul made these payments.

We agree with the Appeals Court that, in calculating prejudgment interest under G. L. c. 231, § 6B (applicable to tort actions), as well as under § 6C (applicable to contract actions), the fact that no loss was incurred until after an action was commenced should be recognized, as a matter of fairness, in order to avoid giving a party an undeserved windfall. See *Conway* v. *Electro Switch Corp.*, 402 Mass. 385, 390 (1988); *Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837, 841-842 (1986); *USM Corp.* v. *Marson Fastener Corp.*, 392 Mass. 334, 349 (1984); *Jet Spray Cooler, Inc.* v. *Crampton*, 377 Mass. 159, 182 n.21 (1979). The use of the dates on which St. Paul made payments for the defense and in settlement of the underlying tort claims, as the Appeals Court ordered, is correct. Interest on the

amount of each payment should begin to run under both judgments from the respective dates of those payments.

The judgments are affirmed, except as to prejudgment interest, for the calculation of which, consistent with this opinion, the case is remanded to the Superior Court.

*So ordered.*