Billings, A.J.
The facts of the case are unusual, but not in dispute. The plaintiff (“Zappella”) obtained a mortgage loan from the defendant (the “Bank”), with which to purchase a commercial property. The parties intended, and the promissory note (the “Note”) reflects, a 15-year, fully amortizing loan of $75,000 at an initial interest rate of 13.50%, adjustable annually so that each new rate would not exceed the rate bearing the same numerical difference from a specified FHLBB index rate as the original rate bore to the same index rate on the date of the Note. The Note recited that for the first year, Zappella’s monthly payment would be $973.74, which the parties agree was correctly computed given the principal amount, initial interest rate, and fully-amortizing nature of the Note.
The problem arose on March 31, 1984, when it came time for the first annual adjustment. On that date, the Bank adjusted the rate downward from 13.50% to 11.73%, reflecting the then falling market. It also — and inadvertently — figured the new monthly payment as if the loan were being amortized over 25 years, not 15 years as had been agreed. This had the effect of further lowering the monthly payment amount, which the notice to Zappella recited was now $765.25, rather than $973.74 as before. The notice also stated, “REMAINING LOAN TERM 24 YRS. AND 0 MO.,” reflecting the Bank’s erroneous use of a 25-year amortization schedule.
Zappella duly made monthly payments, as instructed, in the new amount. The error was repeated in notices from the Bank to Zapella sent in or around the month of March 31 in the years 1985, 1986, 1987, 1988, 1989, 1990, 1991, 1992, 1993, 1994, 1995 and 1996. Market interest rates, and thus those charged on the loan, continued generally downward, such that the February 28, 1996 notice gave a new rate of 8.125% and a new monthly payment amount of $549.23. The notices in 1988 and in 1990 through 1996 — but not those in other years — also gave the principal balance outstanding, from which the sharp-eyed reader might ascertain, in the later years, that the balance would not be retired by the 15-year maturity date. Zappella’s affidavit suggests, however— and the record contains no reason to doubt — that notwithstanding the occasional clues appearing in the notices, he did not actually appreciate the Bank’s error, or the fact that his loan would not be paid off at the end of fifteen years, until he heard from the Bank on the subject in 1997.
In that year — the fourteenth year of the fifteen-year loan — the Bank informed Zappella of its mistake, and of the fact that because his monthly payments had been smaller than they should have been, a substantial amount of principal was still owing. By the Bank’s reckoning, this amount was $43,091.66. The Bank began discussing with Zappella what to do about it. It offered him four options:
Pay the amount due in a lump sum;
Increase the amount of the last twelve monthly payments from $549.23 to $4,004.10;
Extend the maturity date by ten years, at an interest rate of 8.375% and a monthly payment amount of $533.74; or
Suffer foreclosure.
Zappella continued making monthly payments in the lower amount until the maturity date of April 21, 1998. His affidavit states (without contradiction in the record before me) that he sought without success to obtain an accounting from the Bank, by which he meant “a statement telling me how much I owed on the Note based on its actual terms — 15-year amortization, because I wouldn’t agree to extend the note or pay 1 penny more than I actually owed I was prepared to pay that amount had they given me the recalculation.”
In its summary judgment motion, the Bank seeks, not $43,091.66, but $21,567.00, plus statutory interest accruing after April 21, 1998. This recalculation was performed as follows:
*360 Had the Bank not made the mistake — in other words, had Zappella made the higher payments that would have amortized the loan fully in fifteen years — those payments would have totaled $146,793.44 ($75,000 in principal and $71,793.44 in interest).
In fact, Zappella paid only $125,226.44 over the fifteen years.
The difference between the two figures is $21,567.00.
The difference between the $21,567.00 figure and the higher, $43,091.66 figure initially demanded by the Bank is attributable to the fact that the more quickly a loan is retired (i.e., the more quickly the principal balance declines), the fewer interest dollars one pays. The $21,567.00 figure, in other words, is simply the shortfall in principal payments caused by Zappella’s having made the lower monthly payments suggested by the Bank; it excludes the fact that normally, this shortfall would also have resulted in a greater liability for interest (because the greater principal balance, the greater the interest charged in a given time period). If Zappella were to be held responsible for this greater interest obligation, on the other hand, he would have owed $43,091.66 at the fifteen-year mark; the 25-year amortization schedule erroneously applied by the Bank from the second year onward would then have retired this remaining balance over the ensuing ten years (i.e., years 11 through 25).
In short, the Bank initially sought to hold Zappella responsible not only for the principal he had not paid, but also for the interest attributable to his delay in paying it. The Bank’s present position — which, it represents, is a one-time offer for summary judgment purposes only — recognizes that it was the Bank who was responsible for the delay, and therefore does not hold Zappella responsible for interest charges that neither party, at the time of the loan contract, intended he should incur.
Zappella commenced this action on June 10, 1998. His Complaint asserts three counts, as follows:
1. For breach of contract, seeking an order that the Bank provide him a release and a discharge of mortgage;
2. For negligence, seeking $100,000 in damages for the approximately $40,000 owed on the loan plus additional “economic harm . . . which the Plaintiff is unable to accurately calculate”; and
3. For violation of G.L.c. 93A, §2.
The Bank counterclaimed on the Note and for money lent, seeking $44,012.14 as of June 1, 1998, plus interest from that date.
DISCUSSION
Taking the counts out of order:
A. Zappella’s Negligence Claim
The plaintiffs negligence claim fails under the so-called economic loss rule.
It has been a long-standing rule in this Commonwealth, in accordance with the majority of jurisdictions that have considered this issue, that “purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage.”
Aldrich v. ADD, Inc., 437 Mass. 213, 222 (2002), quoting FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993). Because the plaintiffs losses, if any,[1] are purely economic, he has not stated a negligence claim. Count 2 is therefore dismissed.
B. Zappella’s and the Bank’s Contract Claims
Zappella’s Count 1, for breach of contract, is best considered in conjunction with the Bank’s counterclaims. The Note provided, in pertinent part, that not less than 30 days before each interest rate adjustment, the Bank would send Zappella a notice specifying the new interest rate and explaining any adjustment, and stating “the monthly installment to be paid until the next Adjustment Date as calculated by the Interest Rate applicable for such period.” The Bank breached this obligation when it sent erroneous notices. Zappella, on the other hand, fell short — albeit inadvertently and because of the Bank’s error — in his own contractual obligation to repay the $75,000 he had borrowed.
From the standpoint of remedy, the Bank’s claim to repayment is best analyzed as one for restitution: because of the Bank’s mistake, Zappella has retained funds belonging to the Bank. “A person who has conferred a benefit upon another by mistake is not precluded from maintaining an action for restitution by the fact that the mistake was due to his lack of care.” Cookson Group plc v. Flynn, 52 Mass.App.Ct. 909, 911 (2001), quoting Restatement of Restitution §59.
The question then is: what amount should Zappella be required to repay? “Ordinarily, the measure of restitution is the amount of enrichment received.” Nassr v. Commonwealth, 394 Mass. 767, 772 n.4 (1985), quoting Restatement of Restitution §1, comment a (1937).
It would be difficult to argue that Zappella’s underpayment of the loan by $21,567 did not enrich him in at least this amount. Indeed, one could make the case that having this shortfall available for his use was a further enrichment, and that the Bank’s original expectation that he be responsible for interest on it, at the contractually agreed rates, was not out of line. As the court said in Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 559 (1997):
The judge’s decision to award interest was well within her power to frame the relief so as to avoid unjust enrichment. The defendants have had the *361 opportunity to earn a return on the cash distributions made to them. The interest charge represents a fair attempt to recapture that return and prevent unjust enrichment. Stated another way, if the funds had not been distributed, any return on those funds would now be among the business assets and liabilities that are also subject to the judge’s order of restitution, so it is proper to reclaim those returns from the individual defendants. (Citation omitted.)
On the other hand, unlike the payments in the Demoulas case, the error here was the Bank’s, not Zappella’s. Through it, Zappella became an involuntary borrower — at least, he was a borrower for longer than he wished and agreed to be one. To charge him with the full $43,091.66 the Bank initially sought is to require him to pay for a privilege he did not wish, intend, or contract to exercise, and did not even know he was exercising. The Bank’s present position — that Zappella owed, at the loan’s maturity date, the difference between what he actually paid and what he would have paid had the Bank’s notices to him reflected the proper amortization schedule — seems the more appropriate measure of restitution.
Unjust enrichment, as a basis for restitution, requires more than benefit. The benefit must be unjust, a quality that turns on the reasonable expectations of the parties. “[A] contracting party must look for payment to the one to whom credit was extended when the work was done, that is, the one who was expected to pay and who in fact expected to pay or as a reasonable man should have expected to pay.”
Community Builders, Inc. v. Indian Motorcycle Associates, Inc., 44 Mass.App.Ct. 537, 560 (1998), quoting LaChance v. Rigoli, 325 Mass. 425, 427 (1950).
Judgment will therefore enter for the Bank on its counterclaim in the amount of $21,567.00. Zappella is entitled to nominal damages on his Count I, on account of the Bank’s breach of its contractual obligation to notify him of the proper monthly installment amounts.
There remains the matter of prejudgment interest. The Bank seeks interest at’the statutory rate of 12%, beginning at the maturity date of April 21, 1998. Under G.L.c. 31, §6C, interest in a contract action is computed at the contract rate, if established, otherwise at 12%; and runs from the date of breach or demand, if established, otherwise from the date of filing. Rote application of these principles would result in Zappella’s paying a substantially higher interest rate than the contract called for.
“The matter of awarding prejudgment interest is, however, one of balancing equities.” USM Corp. v. Marson Fastener Corp., 392 Mass. 334, 350 (1984). The statute is unambiguous, but has been judicially modified in unusual cases, “as a matter of fairness, in order to avoid giving a party an undeserved windfall,” St. Paul Surplus Lines Ins. Co. v. Feingold & Feingold Ins. Agency, Inc., 427 Mass. 372, 377 (1998), and in recognition of the statute’s purpose, which is to award interest “so that a person wrongfully deprived of the use of money should be made whole for his loss.” Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 840-42 (1986), quoting Perkins School for the Blind v. Rate Setting Comm’n, 383 Mass. 825, 835 (1981).
Here, the delay in Zappella’s repayment of the loan is a result of (a) the Bank’s error, followed by (b) Zappella’s understandable refusal to pay more than he had contracted to pay, his request for an accounting, and the Bank’s refusal to provide him with the information he sought. It seems patently unfair to tax Zappella with an above-market and above-contract rate in these circumstances. The order for judgment will therefore require that the Bank calculate the interest due on $21,567.00, from April 21, 1998 forward, at the rates that would have applied had the Bank continued making the periodic rate adjustments required by the Note. The judgment itself will bear interest at the adjusted rate in effect as of the date of the judgment.
C. Zappella’s Claim Under Chapter 93A
Summary judgment will enter for the Bank, dismissing Count 3 of the Complaint. The only arguably deceptive conduct by the Bank was its inadvertent error in setting the monthly payment amount on the rate adjustment notices. Zappella did not suffer a loss of money or property, however; rather, he retained $21,567 rather longer than he otherwise would have.
Nor did the Bank commit “unfair” conduct under the familiar eyebrow-raising standard applicable to Section 11 plaintiffs such as Zappella. See Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979). While I have held it was not entitled to the full $43,091.66 it originally demanded of him, and while the communications between the parties on the subject of how to address the underpayment were certainly sub-optimal, the facts were unusual and the Bank’s legal position was not frivolous, and its proposed resolution was at least arguably fair to both sides. Finally, Zappella did not pay the $43,091.66, and so lost no money or property as a result of the Bank’s claiming it.
ORDER FOR JUDGMENT
For the foregoing reasons, summary judgment shall enter:
1. In favor of the plaintiff for nominal damages in the amount of $1.00 on Count I of the Complaint;
2. Dismissing Counts 2 and 3 of the Complaint; and
3. In favor of the defendant on its counterclaim, in the amount of $21,567.00.
Entry of judgment shall be held for ten days from the date this Order is entered on the docket, within *362 which time the defendant shall submit an itemized calculation of the prejudgment interest due on the $21,567.00 awarded to it on the Counterclaim, using the formula for adjusting the interest rate as provided in the Indexed Adjustable Rate Mortgage Note between the parties dated April 21, 1983, and specifying the-rate applied to each period. The judgment shall bear interest at the rate applicable as of the date of entry of the judgment.

The Bank argues that the plaintiff has suffered no damage at all. As things now stand, that would appear to be the case: the plaintiff has repaid less on his loan than he would have had the Bank not made the mistake. This would no longer be the case, however, were the Bank granted the $44,000-plus that it originally sought. See below.
I note here as well that the plaintiffs $100,000 ad damnum on the negligence count violated G.L.c. 231, §13B, since a large portion of that figure was unliquidated and not ascertainable by calculation.