APPEALS COURT 
 
 PEOPLESBANK vs. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON

 
 Docket:
 24-P-135
 
 
 Dates:
 December 16, 2024 – April 25, 2025
 
 
 Present:
 Henry, Desmond, & Englander, JJ.
 
 
 County:
 Hampshire
 

 
 Keywords:
 Contract, Indemnity, Performance and breach. Insurance, Coverage, Construction of policy, Interest. Practice, Civil, Interest. Damages, Interest, Breach of contract. Interest. Statute, Construction.
 
 

       Civil action commenced in the Superior
Court Department on August 3, 2018. 
      The case was heard by John A. Agostini,
J.; a motion for entry of final judgment, filed on September 5, 2023, was heard
by James M. Manitsas, J., a motion for reconsideration was considered by him,
and entry of final judgment was ordered by him. 
      Christopher M. Reilly for the plaintiff.
      William A. Schneider for the defendant.
      ENGLANDER, J.  The appeal in this insurance coverage dispute
presents another factual variant as to the appropriate calculation of
prejudgment interest under G. L. c. 231, § 6C.  Here, the defendant, Certain Underwriters at
Lloyd's, London (Lloyd's), denied coverage under a builder's risk insurance
policy for a loss claimed by the plaintiff, PeoplesBank (Peoples), related to a
building damaged by a fire.  After a
jury-waived trial, the trial judge found that Lloyd's had breached the policy
by denying coverage.  The parties
thereafter agreed, in two separate stipulations, to a total amount of covered
loss of $2.5 million; however, the parties disagreed as to when prejudgment
interest began to accrue on that amount. 
The motion judge determined that interest would be calculated at the
statutory rate of twelve percent per annum from April 27, 2021, the date of the
parties' first stipulation on damages. 
See G. L. c. 231, § 6C (§ 6C).  A judgment entered to that effect.
      On appeal, Peoples argues that it is
entitled to an additional $800,000 in prejudgment interest because interest
should have been awarded beginning on July 3, 2018, which was the date that
Lloyd's denied coverage to Peoples. 
Lloyd's counters that the earlier date is wrong, because under the
policy language Lloyd's obligation to pay did not arise until much later, in
2021.  Application of § 6C is
complicated, because the case law freely acknowledges that under some
circumstances, our courts have not followed the statute's plain language in
awarding interest.[1]  Here we conclude
that interest on the first stipulated amount ($2.274 million) should be
calculated from the date that Lloyd's denied coverage in 2018 (which is the
date of the breach), and that interest on the remaining amount ($236,000)
should be calculated from the date that additional amount was actually paid to
one of the contractors for work completed, in 2022.  Accordingly, we vacate so much of the
judgment as awarded prejudgment interest and remand for a recalculation
consistent with this opinion.
      Factual and procedural history.  The insurance policy at issue is a builder's
risk policy[2] that Lloyd's issued to Historic Round Hill Summit, LLC
(Historic), in April 2016.  Historic
purchased and began to renovate two buildings, Hubbard Hall and Rogers Hall, in
Northampton.  The policy was obtained to
cover losses, if any, while construction was ongoing.  Peoples held a first mortgage on the
property.  Peoples was also covered under
Historic's builder's risk policy, pursuant to a mortgage holder endorsement
provision (mortgage holder endorsement).
      In August 2016, a fire destroyed Rogers
Hall and caused extensive water and smoke damage at Hubbard Hall.  Lloyd's paid for Historic's loss as to Rogers
Hall; however, Lloyd's asserted that Historic's loss as to Hubbard Hall was not
covered under the policy because (unbeknownst to Lloyd's) the building was
occupied by tenants at the time of the fire.[3] 
Peoples, however, claimed that it was separately entitled to coverage
for the Hubbard Hall loss, pursuant to the mortgage holder endorsement.  In June of 2018 Peoples submitted a proof of
loss to Lloyd's seeking coverage in the amount of approximately $2.8
million.  On July 3, 2018, Lloyd's
rejected Peoples's claim, contending that coverage did not apply to Hubbard
Hall at the time of the fire because it was occupied, and that "the
mortgage holder may not claim independently of the insured [i.e.,
Historic]."  Lloyd's also stated
that it "does not necessarily agree with the full cost of repair or
replacement" claimed by Peoples.
      Peoples then brought this breach of
contract action against Lloyd's, claiming that even if Historic was not
covered, Peoples could recover the Hubbard Hall losses under the mortgage
holder endorsement.  After a jury-waived
trial, the trial judge found that Lloyd's was in breach of the mortgage holder
endorsement and was obligated to cover the loss to Peoples, where Peoples did
not have actual knowledge that Hubbard Hall was occupied at the time of the
fire.[4]
      On the issue of damages, the parties
entered into a stipulation dated April 27, 2021, that the cost to repair the
damage to Hubbard Hall was $2,274,194.07 (first stipulation); that stipulation
was incomplete, however, because it expressly did not include the cost for work
performed at Hubbard Hall by one of Historic's contractors, Complete
Restoration Solutions, Inc. (CRS).  As
discussed further below, as of April 2021 the amounts due to CRS had not been
resolved, as Historic challenged the amount of CRS's bills.  The CRS dispute was the subject of a separate
lawsuit that was consolidated with this insurance action between Peoples and
Lloyd's.[5]
      After the parties' first damages
stipulation, Lloyd's sought entry of judgment, which Peoples opposed on the
basis that the CRS litigation was ongoing and the judgment in this action must
include the amount, if any, paid for the CRS work.  The trial judge denied the motion, thereby
delaying entry of judgment.  Ultimately,
Historic and CRS settled, after which Lloyd's and Peoples filed a second stipulation
dated May 24, 2023, establishing that the fair value of CRS's work recoverable
under the mortgage holder endorsement was $236,000 (second stipulation).
      After the parties' second stipulation,
Peoples filed a motion for entry of a final judgment against Lloyd's in the
amount of $2,510,194.07, which included both stipulated amounts.  Peoples also sought prejudgment interest from
July 3, 2018 (the date Lloyd's denied coverage to Peoples).  Lloyd's countered that prejudgment interest
should run from dates in 2021 and 2023, reasoning that interest began to accrue
only when the amounts became due under the "loss payment" provision
of the Lloyd's builder's risk policy. 
That provision states,
"We will pay
or make good any 'loss' covered under this Coverage Part within 30 days after:
"1.  We reach an agreement with you;
"2.  The entry of final judgment; or
"3.  The filing of an appraisal award.
"We will not
be liable for any part of a 'loss' that has been paid or made good by
others."
      Based on the loss payment provision,
Lloyd's argued that it was not obligated to pay Peoples before Lloyd's and
Peoples had reached agreement, and that prejudgment interest should only begin
to accrue thirty days after the entry of each stipulated amount, i.e., May 27,
2021, for the first stipulation, and June 24, 2023, for the second
stipulation.  Following a hearing, the
motion judge (who was not the trial judge) concluded that statutory interest
would be calculated on the total amount of damages ($2,510,194.07) from the
date of the first stipulation (April 27, 2021) to avoid "a windfall to the
recipient."  A separate and final
judgment entered against Lloyd's that included prejudgment interest from April
27, 2021.  This appeal followed.
      Discussion.  The issue is whether the motion judge
properly applied G. L. c. 231, § 6C, in holding that prejudgment
interest on Peoples's successful breach of contract claim began to accrue on
April 27, 2021.  Based in part on the
plain language of § 6C, Peoples argues that interest should be calculated
from "the date of the breach," and that the breach here occurred when
Lloyd's rejected Peoples's coverage claim on July 3, 2018.  Lloyd's counters that awarding prejudgment interest
from the date of the breach would result in an unfair windfall to Peoples,
because Peoples had delayed the entry of judgment by insisting on including the
CRS amount.  Instead, Lloyd's maintains
that interest should run from the date that payment was due to Peoples under
the loss payment provision of the policy.[6]
      Section 6C governs the calculation of
prejudgment interest on damages in cases "based on contractual
obligations."  The statute "is
designed to compensate a damaged party for the loss of use or unlawful
detention of money" (citation omitted). 
Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 841 (1986)
(Sterilite).  Thus, "[a]n award of
interest is made so that a person wrongfully deprived of the use of money
should be made whole for his loss" (quotation and citation omitted).  Id.  The statute states, in relevant part,
"In all
actions based on contractual obligations, upon a . . . judgment for
pecuniary damages, interest shall be added by the clerk of the court
. . . at the contract rate, if established, or at the rate of twelve
per cent per annum from the date of the breach or demand.  If the date of the breach or demand is not
established, interest shall be added . . . from the date of the
commencement of the action."

Thus, under the
statutory language interest is added at the contract rate, if any, or at a rate
of twelve percent "from the date of the breach or demand."  G. L. c. 231, § 6C.
      In this case, a straightforward, plain
language application of § 6C would result in prejudgment interest
commencing in July of 2018.  That is the
"date of the breach" -- the date Lloyd's wrongfully declined
coverage.  Under controlling case law,
however, § 6C is not always applied in accordance with its plain language.  Thus, in Sterilite, the defendant insurance
company had improperly denied coverage to an insured threatened with a
lawsuit.  See Sterilite, 397 Mass. at
838.  The insured later incurred
litigation defense costs, consisting of periodic bills for attorney's fees that
the insured paid.  See id.  The Supreme Judicial Court held that the
interest on these damages did not accrue from the date of breach (the denial of
coverage), but instead accrued when the insured actually paid the bills for the
attorney's fees, years later.  See id. at
841-842.  The court acknowledged that it
was varying from the statute's plain language, in order to avoid a
"windfall" to the insured.  Id.
at 842.  It reasoned,
"While the
defendant was in breach of its duty to defend Sterilite on January 5, 1976,
there was no duty at that time to reimburse Sterilite for legal expenses
incurred at later dates.  This duty arose
when Sterilite, on notice that the defendant would refuse to pay for those
expenses, was forced to pay those expenses itself.  The dates of the payment of the various
bills, which are readily ascertainable, determine the points at which Sterilite
was obliged to commit sums which it rightfully should not have been obliged to
commit.  Before those bills were paid,
Sterilite was not deprived of the use of its money.  No interest is due on sums when Sterilite was
not deprived of the use of those sums. 
Any other rule would result in a windfall for Sterilite, which the
Legislature did not intend."
Id. at 841–842.
      Lloyd's seizes on a part of the above
language to argue that prejudgment interest should not begin until Lloyd's had
a "duty . . . to reimburse" Peoples.  Lloyd's argues that its duty to reimburse was
governed by the "loss payment" provision of the insurance contract,
and thus did not arise until Lloyd's had reached agreement with Peoples on the
amount.  We do not agree that the
obligation to pay interest can be delayed in this fashion.  The critical difference between this case and
Sterilite is that in this case, the record shows that the $2.274 million for
which Peoples sought coverage had actually been paid, for the repair of Hubbard
Hall, before Lloyd's breached by denying coverage.[7]  Thus, as to that sum, no windfall to Peoples
would result from awarding prejudgment interest from the date of the breach.
      Our review of Sterilite and subsequent
cases indicates that deviation from the plain language of § 6C is merited
only when a windfall will otherwise result.[8] 
That is the thrust of the court's reasoning -- that judges may deviate
from the plain language when the result that would otherwise be reached is
clearly inconsistent with the Legislature's intent.  See Sterilite, 397 Mass. at 839-842.  But deviation from plain language will be an
exception, and there is no sound reason to do so here.  Lloyd's breached the contract.  Had Lloyd's adhered to the contract, $2.274
million should have been paid to Peoples in response to the demand.  Thus, as to the $2.274 million, a
straightforward application of the statute's language yields an interest
accrual date of July 3, 2018.
      On the facts here, there is little to
commend Lloyd's position that the accrual of interest should be delayed until
(in its view) it had an obligation under the loss payment provision of the
policy.  Lloyd's breach of its duty to
provide coverage was, in essence, a rejection that the contract applied.  Lloyd's disputed that any loss to Hubbard
Hall was covered under the mortgage holder endorsement and forced litigation on
that issue, thereby delaying when payment would become due under the policy and
leaving Peoples (and Historic) to fend for themselves.[9],[10]
      These facts distinguish Sterilite, where
the insurer's breach of the duty to defend did not delay the date that payments
became due under the policy.  See
Sterilite, 397 Mass. at 841.  Instead,
the amounts only became due as the legal expenses were incurred and billed over
the course of a six-year period; the insurer was in breach of its duty to
reimburse the insured on each occasion payment was due and the insured was
forced to cover the expense.  See id. at
838, 841-842.  Lloyd's reliance on
Sterilite is misplaced.
      Accordingly, as to the first stipulated
amount ($2,274,194.07), we do not deviate from the statutory language in
determining prejudgment interest.  To do
so would result in a windfall to Lloyd's for its breach.  See Cambridge Trust Co. v. Commercial Union
Ins. Co., 32 Mass. App. Ct. 561, 568 (1992) (bank entitled to prejudgment
interest for "period between wrongful refusal by an insurer to pay a
proper claim and ultimate recovery after litigation").  Cf. Olin Corp. v. OneBeacon Am. Ins. Co., 864
F.3d 130, 152 (2d Cir. 2017) (under New York's prejudgment interest statute,
insurer may not "benefit from its tactical decision to deny its
contractual obligation to indemnify [the insured] for covered losses by avoiding
liability for interest.  It is not the
intention of [the New York statute] that an insurer could deny coverage for
years in the face of reasonable demands and then, once it is adjudicated
liable, avoid paying any prejudgment interest").[11]
      As to the second stipulated amount
($236,000), the circumstances differ because Historic did not pay that amount
until 2022, when Historic and CRS resolved their litigation over the amount due
for CRS's work on Hubbard Hall.  As to
that amount, CRS originally billed Historic approximately $600,000 in
2016.  When Historic declined to pay, CRS
brought an action in Superior Court and Historic filed counterclaims.  Historic's position was that CRS's bill was
"wildly and fraudulently inflated." 
CRS and Historic ultimately settled the suit in November 2022, and CRS
was paid $295,000.[12]  Thereafter, in
2023, Peoples and Lloyd's reached a further agreement that only a portion
($236,000) of the settlement amount was part of the covered loss under the
mortgage holder endorsement.  In these
specific circumstances, Sterilite teaches that the appropriate course is to
award prejudgment interest only from the date that CRS was paid for its work
following settlement with Historic.  See
St. Paul Surplus Lines Ins. Co. v. Feingold & Feingold Ins. Agency, Inc.,
427 Mass. 372, 377 (1998) ("in calculating prejudgment interest under
. . . § 6C [applicable to contract actions], the fact that no
loss was incurred until after an action was commenced should be recognized, as
a matter of fairness, in order to avoid giving a party an undeserved
windfall").[13]
      Conclusion.  So much of the judgment dated December 13,
2023, as awarded prejudgment interest from April 27, 2021, is vacated.  Prejudgment interest should be calculated on
the first stipulated amount ($2,274,194.07) from the date of Lloyd's breach on
July 3, 2018, and on the second stipulated amount ($236,000) from the date that
the second stipulated amount was paid to CRS for its work on November 7,
2022.  The judgment is otherwise affirmed.  The matter is remanded for the recalculation
of prejudgment interest consistent with this opinion and the entry of an
amended judgment.
So ordered.

footnotes

[1] See, e.g.,
Bank v. Thermo Elemental Inc., 451 Mass. 638, 662–663 (2008); Sterilite Corp.
v. Continental Cas. Co., 397 Mass. 837, 841-842 (1986).

[2] Builder's
risk insurance covers a project in construction before it becomes insurable as
a building.  After construction is
complete and a certificate of occupancy is issued, insurance coverage would be
obtained through a standard commercial policy.

[3] The policy
states, in part, that coverage will end "when a structure is occupied or
put to its intended use, without [Lloyd's] written consent."

[4] In
determining that Peoples was covered so long as it did not have actual
knowledge that Hubbard Hall was occupied, the judge interpreted the mortgage
holder endorsement that states, in part,   

"If we deny
your claim because of your acts or because you have failed to comply with the
terms of this Coverage Part, the mortgage holder will still have the right to
receive loss payment if the mortgage holder . . . has notified us of
any change in ownership, occupancy or substantial change in risk known to the
mortgage holder.  All of the terms of
this Coverage Part will then apply directly to the mortgage holder."  (Emphasis added.)

[5] Lloyd's was a
third-party defendant in the lawsuit between CRS and Historic.

[6] Although Lloyd's
argues that interest should have been calculated in a manner different from
that used by the motion judge, Lloyd's did not cross-appeal and requests only
that we affirm the judgment.

[7] On appeal
Lloyd's argues, for the first time, that Peoples was required to present
evidence of when it made payments for the work to Hubbard Hall.  However, Lloyd's itself represented in its
Superior Court briefing that Peoples paid for the repairs to Hubbard Hall
(other than the amount due to CRS) before bringing this action in August
2018.  The issue is waived because it was
not raised in the trial court.  See Carey
v. New England Organ Bank, 446 Mass. 270, 285 (2006).

[8] See, e.g.,
Bank, 451 Mass. at 663 (interest accrued from last day of year in which each
bill was paid); Santos v. Chrysler Corp., 430 Mass. 198, 218 (1999) (interest
accrued from dates that legal bills were paid by retail seller when car
manufacturer wrongfully refused to indemnify it); O'Malley v. O'Malley, 419
Mass. 377, 381 (1995) (interest accrued from end of each year that judge
determined plaintiff was entitled to twenty percent of profits); Craft v. Kane,
65 Mass. App. Ct. 322, 328 (2005) (interest accrued from date that judge
entered order establishing amount of attorney's fees subject to lien); Kelly v.
Dimeo, Inc., 31 Mass. App. Ct. 626, 630-631 (1991) (interest accrued from date
of settlement payment by general contractor when subcontractor wrongfully
refused to indemnify it).  Cf. St. Paul
Surplus Lines Ins. Co. v. Feingold & Feingold Ins. Agency, Inc., 427 Mass.
372, 377-378 (1998) (interest accrued under G. L. c. 231, § 6B,
from dates that insurer paid for defense and settlement of underlying tort
claims).

[9] For the same
reasons, we reject Lloyd's argument that Peoples waived its right to claim
interest from the date of the breach by forgoing reference or an appraisal on
the amount of the loss under the policy. 
The parties expressly agreed to postpone resolution of any dispute
concerning the amount of the loss until the coverage issue was resolved.  Given that Lloyd's continued to dispute
coverage, it cannot now seek to reduce the amount of interest owed Peoples by
virtue of that agreement.

[10] Johnson v.
Settino, 495 Mass. 42 (2024), is not to the contrary.  There, the Supreme Judicial Court held that
prejudgment interest should begin to accrue even before the plaintiff (in
counterclaim) was "out of pocket," because there was detrimental
reliance by the plaintiff (in counterclaim) and intentional delay in payment by
the defendant after his duty to pay arose. 
Id. at 54.

[11] In other
contexts, Federal courts have held that when an insurer improperly disavows
liability, it cannot treat an insured's subsequent failure to meet a condition
precedent to payment as a bar to the insured's right to recover.  See Insurance Co. of N. Am. v. Newtowne Mfg.
Co., 187 F.2d 675, 684-685 (1st Cir. 1951). 
See also M. DeMatteo Constr. Co. v. Century Indem. Co., 182
F. Supp. 2d 146, 158 (D. Mass. 2001) (insurer forfeited right to
argue insured had duty to preserve subrogation rights where insurer disavowed
liability under policy).  That same logic
applies here to Lloyd's purported reliance on the loss payment provision of the
policy to avoid the accrual of interest.

[12] Peoples
represented in the Superior Court that CRS was paid on November 7, 2022, after
the CRS and Historic lawsuit was settled. 
We accept that representation for the purposes of our analysis.

[13] This result
is consistent with the court's explanation in Bank, 451 Mass. at 662–663, that     
"when
expenses incurred as a result of a contract breach are not paid by a plaintiff
until after the breach has occurred, the interest is calculated not from the
date of the breach or even the date the action was commenced, as the plain
language of the statute would require, but from the date or dates on which the
plaintiff made such payments."    
We nevertheless
note, however, that the trial judge enjoys some discretion in setting accrual
dates for prejudgment interest.  The
process need not be micromanaged in this court; for example, sensible
adjustments to simplify calculations will not be overturned.  See id. at 663 (judge's "approximation
avoided using the more than 180 different dates of accrual that would have been
required for a more precise calculation based on the actual dates the invoices
were paid").